In re Estate of Copeland.

(No. 471—Decided December 28, 1943.)

*Messrs. Woolley & Rowland,* for the exceptor.
*Mr. Harold J. Rose* and *Mr. John W. Bolin,* for the administrator.

Metcalf, J.  Thomas E. Copeland, a resident of Athens county, Ohio, died intestate on June 21, 1942, leaving $5,650 in currency in his safe-deposit box in the

First National Bank of Amesville, Athens county, which was included in the inventory and appraisement of his estate. To that item Gusta Norris, his niece, filed exceptions in the Probate Court, claiming this currency by virtue of a contract with Copeland whereby Copeland, in consideration of services performed and to be performed, agreed she should have, own and use this money. The administrator denied that any contract existed between Copeland and exceptor.

The Probate Court found that a tenancy in common existed and divided the currency equally between the administrator and exceptor. From this finding and judgment each party appealed to this court, both appeals now standing on questions of law.

Motions for a new trial were filed by both parties on January 13, 1943, within three days from the delivery of the written opinion by the trial court to counsel's respective offices although the opinion was never filed in the trial court, was not journalized and does not appear in the record or among the papers.

On February 19, 1943, the trial court journalized its finding in the same entry with the judgment, and on this date the respective parties refiled their motions for a new trial. All of the motions were overruled on this date. Between the delivery of the written memoranda of the court's decision and the journalizing of the finding, the court, upon the request of counsel for exceptor, signed a separate finding of fact and law under date of February 10, 1943. No reference is made to this separate finding, either on the docket or in the journal, other than on that date there appears in the transcript of docket entries, the notation, "statement of facts of exceptor filed." Counsel for exceptor maintain that inasmuch as no motion for a new trial was filed by the administrator within the prescribed time from the signing of the separate finding of law and fact by the trial court, this court is precluded from

considering this case on the weight of the evidence. It is clear that counsel for both parties were, out of abundant precaution, doing everything possible to protect their respective rights in the refiling of the motions for a new trial. They were trying to conform to the pronouncement in the case of *In re Estate of Lowry,* 140 Ohio St., 223, 42 N. E. (2d), 987, and apparently were of the belief, by reason of the established principle that the court speaks only through its journal, that in order to preserve their rights the motions should be refiled upon the journalization of the finding and decision of the trial court.

Appreciating the confusion that exists in Ohio surrounding the due filing of a motion for a new trial, especially in view of the *Lowry case, supra,* this court is not going to add further to the uncertainty by holding that a third motion for a new trial should have been filed upon the signing of the separate finding of fact and law which was not journalized. It is our considered opinion that in order for the finding of the court in an action at law without the intervention of a jury, to be equivalent of a verdict of a jury, it must meet the requirement of Section 11420-17, General Code, which among other things provides that the verdict and finding of a jury must be entered in the journal and filed with the clerk. The administrator having filed a motion for a new trial within the prescribed time of the entry journalizing the finding of the court, the same was duly filed.

The record discloses that Thomas E. Copeland had been an elderly bachelor living in the home of an acquaintance of the same status; and that as his health began to fail, exceptor who lived in the adjoining county visited him from one to three times a week over a period of several months and performed services such as looking after Copeland's laundry, preparing food and keeping his bed and body clean. The evi-

dence also shows that others of his next of kin visited Copeland and helped him to the extent the distance between their homes would permit. There was a friendly relationship existing between Copeland and all of them.

Decedent had no bank account. He kept his money in currency, in a safe-deposit box, paying rental therefor, but at all times concerned here left the key with the bank. On April 2, 1942, he requested the cashier of the bank to bring him the contents of his box which consisted of the currency in question. After some conversation he instructed the cashier to take the currency back to the box, the cashier giving the following receipt which was found among Copeland's effects after his decease:

"April 2 - 1942.

"Received of Thomas Copeland five thousand six hundred fifty dollars for placing in safe deposit box No. 67 in First National Bank Amesville to be subject to withdrawal by Gusta Norris.

"F. L. Thomas cashier."

The cashier added to the typewritten name of "Thomas Copeland" on the loose-leaf record kept by the bank of its boxholders, by writing in ink the following notation, "or Gusta Norris or the survivor." No withdrawal was made by either Copeland or exceptor and exceptor never visited the bank until a few hours before the funeral of Copeland when she came to inquire how the money was placed.

Mr. Thomas, the cashier, was called as a witness by exceptor and testified to the circumstances surrounding his visit to Copeland with the currency and the return thereof to the safe-deposit box, the execution of the receipt and the notation on the record. His testimony was, in effect, that he inquired of Copeland what he intended to do with this currency; that he pointed out to Copeland the danger by way of fire or other-

wise of having this much currency about him; that he might live a long time and need some of this money; and that Copeland stated that he was going to keep this currency on his person because he wanted no lawyers or court to get any of his money, that he was making out a list of how his money should go, that Gusta Norris, the exceptor here, was to divide it for him, and that if anything happened to the money it would happen to him because it would be right in his clothes.

As a result of their conversation Copeland decided to let Thomas take the currency back, with the statement, "if anything happened to him it was to be paid over to Gusta Norris." Thomas further testified that Copeland did not instruct him to place the ink notation on the record referred to above, but that he did so because he "thought it would cover the case."

Another witness testified that Copeland subsequently stated "he had sent the money back and he had fixed the money for Gusta Norris to draw." Exceptor's husband testified that Copeland said "he was going to fix this money and either give it to her (exceptor) or fix it so she could get it for the services done; what she was doing for him and what he expected her to do until his death"; and that at another time Copeland handed the receipt to her and said "I have fixed this paper which gives you the money * * * it is yours, sister, it gives it to you."

The proffered testimony of exceptor, while not to the same transaction testified to by the cashier, is to the effect that Copeland was to "either get the money * * * for her or have it fixed * * * so that she could draw it at any time," and that after the transaction with the cashier Copeland gave her the receipt and said "she could take that to the bank and get the money at any time." The exclusion of this testimony by the trial court was not prejudicial for it added nothing to the essential element of delivery.

As to the insufficiency of these statements of Copeland to prove delivery, see *Atchley, Exr.,* v. *Rimmer,* 148 Tenn., 303, 323, 255 S. W., 366, 372, 30 A. L. R., 1481, 1491; and *Reynolds* v. *Kenney, Admr.,* 87 N. H., 313, 179 A., 16, 18, 98 A. L. R., 751, 754, quoted from with approval in *Bolles* v. *Toledo Trust Co., Exr.,* 132 Ohio St., 21, 4 N. E. (2d), 917.

Since it is strongly urged by counsel for exceptor that this case is governed by the decided cases in Ohio relative to joint bank accounts, with the attendant incident of survivorship, we should look to those cases to determine whether Copeland, by his contract with the bank, either vested Gusta Norris with a present interest in the currency sufficient for her to take as the survivor or whether by this contract he completed the gift of the currency to her.

In such class of cases the Supreme Court of Ohio has adopted the contract theory as distinguished from the gift or trust theory followed in many jurisdictions. This contract theory simply means that there is a joint-deposit contract in such form that the execution thereof by the depositor and the bank supplies the essentials of a completed gift. Or, as expressed in slightly different language, the delivery which must accompany an ordinary gift is rendered unnecessary by the contract by which the bank becomes obligated to both donor and donee. Annotation in 48 A. L. R., 206. A deposit in a bank account creates the relationship of debtor and creditor. The title to the money deposited passes from the depositor to the bank. The depositor loses control and dominion over the money deposited and the bank becomes a debtor to the depositor in the amount of the deposit. The depositor is then in a position to so contract with the bank that a third party is vested with a present interest in the debt that will, if unrevoked, survive the death of the depositor.

One of the first decisions of the Supreme Court of

Ohio under the contract theory is the case of *Cleveland Trust Co.* v. *Scobie, Admr.,* 114 Ohio St., 241, 151 N. E., 373, 48 A. L. R., 182, wherein this pertinent language is used on page 247:

"In this kind of deposit the title to the money deposited passes to the bank from the depositor. The depositor is not entitled to have the identical thing deposited returned to him, but the bank becomes the depositor's debtor in the amount of the deposit."

This same principle runs through all the Supreme Court cases of Ohio where the contract theory is pronounced. Attention is called to the case of *In re Estate of Hutchison,* 120 Ohio St., 542, 166 N. E., 687. There it was the contract by and between the creditors on the one side and the debtor, the corporation, on the other. Again in the case of *Oleff, Admr.,* v. *Hodapp, Gdn.,* 129 Ohio St., 432, 195 N. E., 838, 98 A. L. R., 764, the relationship of debtor and creditor existed between the depositor and the building and loan association. The same is true in the case of *Sage, Exr.,* v. *Flueck,* 132 Ohio St., 377, 7 N. E. (2d), 802. In that case, where a bank instead of a building and loan association was involved, the court had this to say on page 380: "Upon acceptance of the deposit, title to the money as specie passed * * * to the bank * * * the bank became their debtor, and they, in turn, became the bank's creditors to the extent of the amount of the deposit." The same relationship of debtor and creditor existed in the case of *In re Estate of Fulk,* 136 Ohio St., 233, 24 N. E. (2d), 1020. In *Berberick* v. *Courtade,* 137 Ohio St., 297, 28 N. E. (2d), 636, the court held that it was the contract pertaining to the deposit with the financial institution that governed the property passing by this contract and not any deed of gift.

The latest pronouncement affecting contracts that permit the survivor to take the joint deposit is the

case of *Rhorbacker, Exr.,* v. *Citizens Building Assn. Co.,* 138 Ohio St., 273, 34 N. E. (2d), 751, 135 A. L. R., 988. The syllabus in that case is premised upon the relationship of creditor and debtor existing between a depositor and a financial institution. The court says on page 275, ''here, the relationship of creditor and debtor existed between * * * [the depositor] and The Citizens Building Association Company.'' In referring to the contract between the depositor and the survivor the court said that such participation is not always required. In other words, the court definitely held that it was the contract between the depositor, the creditor, and the banking institution, the debtor, that controlled.

The relationship between Copeland and the First National Bank of Amesville was not that of debtor and creditor. Copeland was at all times entitled to have the identical currency placed in the safe-deposit box returned to him. The bank in no way took title to the money as would have been the case had the money been deposited in an account. Therefore it was not possible for Copeland by contract with the bank, in the manner attempted, to complete any transfer he intended to make of the currency, effective after his death, to Gusta Norris, regardless of whether she was to have it, as she claims, outright, or was to distribute it, as testified by the cashier, in lieu of administration.

It is said in 5 Ohio Jurisprudence, 376, Section 83, in discussing safe-deposit boxes or vaults provided by a bank to be used by its patrons, that the bank ''has no control over the contents of its vaults, and is not concerned with contracts made by its patrons with respect to the contents of the vaults, whether made before or after the deposit. The relation between it and its patrons is that of landlord and tenant and the tenant may do with the contents of the box as he pleases.''

In 6 American Jurisprudence, 479, Section 407, the relationship of the parties is defined as follows:

"It appears generally to be well settled that where a safe-deposit company leases a safe-deposit box or safe and the lessee takes possession of the box or safe and places therein his securities or other valuables, the relation of bailee and bailor is created between the parties to the transaction as to such securities or other valuables * * *."

In *Carples* v. *Cumberland Coal & Iron Co.*, 240 N. Y., 187, 148 N. E., 185, 39 A. L. R., 1211, in discussing this relationship it was pointed out that while the status of the safe-deposit company is in some respects that of bailee, it is, in others, not much different than that of landlord.

Many jurisdictions designate the relationship as that of landlord and tenant, others as bailee and bailor, but in no jurisdiction do we find any cases fixing the relationship as debtor and creditor. Permitting the keys to the box to remain with the bank was for the convenience of Copeland and may have had some bearing on the degree of care to be exercised by the bank but did not make it a debtor to Copeland. Neither does the fact that the contents of the box was currency change this relationship.

This case does not come within that class of cases wherein the survivor is permitted to take by reason of a contract of deposit. Here decedent placed his own money in his own safe-deposit box and arranged only that his niece should have the right to make withdrawals. This right terminated upon the death of Copeland. *Bender* v. *Cleveland Trust Co.*, 123 Ohio St., 588, 176 N. E., 452. Neither does the record divulge compliance with the procedure and requirements which the law says are essential to the completion of a valid gift *inter vivos*. *Bolles* v. *Toledo Trust Co., Exr., supra*.

The judgment of the Probate Court must be reversed and judgment rendered for the administrator.

*Judgment reversed.*

McCurdy, P. J., and Gillen, J., concur.