### JONES, Estate of, In re.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 22593.   Decided December 1, 1952.

Robert Merkle, Cleveland, for complainee, appellant.
Russell N. Chase, Cleveland, for complainant-appellee.

## OPINION

By SKEEL, PJ.

This appeal comes to this court on questions of law from a judgment entered for the complainant by the trial court. The action is one seeking to recover concealed assets of the estate of Isabel S. Jones, deceased, which the complainant alleges to be in the possession of the complainee.

The complainant, administratrix of the estate of Isabel S. Jones, filed a complaint (under the provisions of Section 10506-67 of the Probate Code) in the common pleas court of Cuyahoga county, against the complainee wherein it is charged that said complainee is concealing the proceeds of two bank accounts belonging to the estate of the deceased, in the total sum of $10,800.44. Upon trial, at the conclusion of taking

all the evidence, the court directed a verdict for the complainant for $9438.97, which in addition to the balance in the bank accounts, included a ten percent penalty as provided by §10506-73 GC, and entered judgment thereon.

The complainee claims the following errors:

"1. That the court erred in holding that the appointment of a guardian for Isabel S. Jones on the 17th day of July. 1951, terminated the agreements which Lee Hamilton had with Isabel S. Jones, concerning the joint and survivorship bank accounts.

"2. It was error to direct a verdict against the complainee-appellant.

"3. It was error to direct a verdict against the complainee-appellant without a motion thereto.

"4. It was error to sustain objections to the evidence showing contracts between the complainee-appellant and the decedent by the terms of which complainee-appellant became absolutely entitled to the money in the bank accounts.

"5. The court erred in disregarding the entire line of decisions of the courts re the vested rights of the parties, by contract, in joint and survivorship bank accounts.

"6. It was error to fail to direct a verdict for the complainee-appellant, the court having arrived at the conclusion that he was not guilty of any wrongful or criminal conduct.

"7. It was error to prevent counsel for the complainee-appellant from cross-examining an important witness called by and examined on behalf of, the complainant-appellee.

"8. It was error to overrule the motion for judgment notwithstanding the verdict and the motion for new trial.

"9. The judgment is not supported by the evidence.

"10. The judgment is contrary to law.

"11. Other errors apparent in the record."

The undisputed facts are as follows:

The deceased, Isabel S. Jones, died at the age of 83 years on July 24, 1951, at Glencliff Sanitarium. The complainee, Lee Hamilton, was a nephew of the deceased. Prior to 1947 he and his wife, who was a practical nurse, lived near at hand to the residence of deceased and rendered service in her care for a long time. On July 31, 1946, without the knowledge of the Hamiltons, the deceased deeded her home to Lee and Jessie Hamilton, reserving a life estate in herself. Because of the fact that circumstances required the Hamiltons to move their place of residence, the deceased during September 1947, told them that she had conveyed the property to them and asked them to build certain additions and make certain repairs to the property and then come to live with her. The Hamil-

tons carried out her wishes, made the repairs, moved into the house and continued to care for her.

The deceased at this time had two bank accounts, one in the Society for Savings in the amount of $7167.86 (as of Feb 12, 1948) the other in South Euclid Savings & Loan Association in the amount of $3596.57 as of September, 1947. When the Hamiltons came to live with her, the deceased changed both these accounts to joint and survivorship accounts with the right of either to draw, naming Lee Hamilton as the joint owner.

The Hamiltons continued to care for the deceased, withdrew certain funds from South Euclid Savings & Loan Association to defray actual expenses, including nurse hire, until June, 1951, when her condition became critical. Upon the advise of her doctor, the deceased was taken to Glencliff Sanitarium on June 23, 1951. Thereafter, Lee Hamilton on July 20, 1951, was appointed guardian of her person, the application being filed in probate court of Cuyahoga county, it being alleged in the application that deceased was without assets. On July 20, 1951, Lee Hamilton (not as guardian) withdrew the balance of both accounts, the amount withdrawn from the Society for Savings being $7522.40 and from South Euclid Savings & Loan Association $1058.49, or a total of $8580.89 which, with ten percent of such amount added, equals the amount of the judgment entered by direction of the court. There is no claim that complainee failed to carry out in full his obligation of support or to take care of funeral expenses.

The complainee alleges by answer, and by attempting to offer evidence to prove such claims, that the deceased, without his knowledge, arranged to transfer the bank accounts, naming him joint owner with the right of either to draw, into joint and survivorship accounts. The first he knew of it was when the signature cards were presented to him. He further claims that at that time, in addition to the contract with the banks for joint and survivorship accounts, either having the right to draw, with complete ownership in the survivor, the deceased and the Hamiltons entered into an agreement that he, Hamilton, should pay all of her bills and funeral expenses and care for her until her death, and whatever is not needed for such purposes during her life, should be used to compensate Lee and Jessie Hamilton for their services in caring for her.

Upon the trial, the court refused to permit the complainee to introduce evidence in support of his claim of such contract for services and care to be paid from the money on deposit in the joint accounts of the deceased and Lee Hamilton. The court's ruling on this question was based presum-

ably upon the provisions of §11495 GC, because the adverse party was an administratrix. In this, the court committed prejudicial error. The record shows that the complainant-administratrix, called Lee Hamilton for cross-examination and examined him concerning the bank accounts. Aside from the fact that the complainant filed the complaint for concealing assets, she also called him as a witness on the subject of title to the money in the bank accounts. This fact alone required the court to permit the complainee to present his testimony in support of his alleged contract for care and support and right to the funds in the bank accounts, after other expenses were paid. The citing of the complainee under §10506-67 GC, which requires him to appear for examination on a claim of concealing assets of an estate, permits him as a matter of right, to testify in support of his defense to the claim of the administratrix. In the case of **Robertson v. Polter, 58 Oh Ap 209** (motion to certify overruled Feb. 9, 1939), this precise question was before the court. The court held, in the syllabus:

"**Sec. 11495 GC** prohibiting a party to an action from testifying in certain instances, has no application to proceedings had upon a citation made upon complaint of an executor under §10506-67 GC relative to discovery of concealed or embezzled assets and does not prohibit the party so cited from testifying as to transactions with the executor's decedent."

And at page 206 of the opinion Judge Lloyd says:

"It is contended that the property given to Polter was placed with him for safekeeping, but no evidence apears in the record justifying such a finding. It is contended that §11495 GC, precludes Polter from testifying as to what the decedent said or did in relation to the claimed gift. It would be strangely incongruous if a person who is suspected of having 'concealed, embezzled or conveyed away or of being, or having been in the possession of any' of the property described in §10506-67 GC and, by authority thereof, is mandatorily cited into court to be examined with respect thereto, were prohibited from speaking in his own defense. It is apparent that §11495 GC, is not applicable to proceedings had under this statute."

See also, **In re Estate of Evans, 71 Oh Ap 127.**

It is further contended by the complainant that the appointment of a guardian for the deceased just prior to her death. terminated the contract creating the joint and survivorship accounts and the deceased was thereby reinvested with title to the money, clear of any claims of the complainee    They rely on the case of **Abrams v. Nickel, 50 Oh Ap 500.** This case is not authority for such claim, nor does it support their contention. The syllabus provides:

"The adjudication of lunacy and appointment of a guardian of one of the two parties to a joint and survivorship account terminates the agreement and as each had a complete interest in the entire account, equity requires, in the absence of extraordinary circumstances, an equal division of the account between the parties involved as of the time the guardian was appointed."

It would be most unusual if the appointing of a guardian of one of the parties to an agreement could in any way deprive the other party to the agreement, which agreement was valid when made, of property rights already vested thereunder. The case cited held that where the agreement was a joint and survivorship account, and a guardian was appointed for one of the parties, thus ending the relationship created by such account, without some extraordinary circumstances, an equal division of the funds should be made. In other words, a question is then presented as to the property right of each of the parties to the joint and survivorship accounts in the funds then held in their joint names. The holding that the joint survivorship accounts must end because of the appointment of a guardian is not completely accurate. Suppose, for example, that it was the purpose of the agreement creating the accounts, as was true in this case, that the party whose name was added to the accounts agreed to render services in the care of the other party until his death, and the accounts were made joint, either party having the right to draw with right to the balance in the survivor, at the death of one of the parties. The accounts were made joint so that the party rendering the services could withdraw funds for necessary expenses, the amount to be paid for such services being measured by what was left at the death of the other party, could it possibly be contended that the party owing the obligation of care would be relieved of his promise to render care because a guardian was appointed for the party to whom the services were due? It must be concluded, therefore, that where the contract for a joint and survivorship account is only a part of the whole agreement between the parties, the provisions of which require one party to render services to the other and by the agreement is to be paid out of the account in the amount remaining at time of death, and such services were rendered continuously as called for by the agreement, the party who owes the obligation of care has a vested interest in the accounts and the appointment of a guardian can in no way disturb such interest, or impair the obligation of the contract.

Nor can it be contended, as was held by the trial court,

that the alleged agreement was testamentary in character. The interest of Hamilton in the accounts, if such interest is established, was the result of his contract to perform services for the deceased which services were to be performed, with the exception of the funeral costs, during her lifetime. The result of the contract contended for by Hamilton, would be a debt due him for services to be paid out of the joint accounts It is not claimed that he was to be a beneficiary of the estate of the deceased upon her death. The principle here involved is the same as was decided by the supreme court in the case of **Streeper v. Myers, 132 Oh St 322.** This was a case involving a gift. The supreme court sustained the gift of bank stock to donor's sons where the donees were not to enjoy the use of the gift property until after the death of the donor, it being provided that he was to have the income from the stock during life. Paragraph 5 of the syllabus provides:

"Where there has been a completed gift of property the reservation by donor to himself during his lifetime of the earnings thereof will not invalidate the gift."

In the case before us we have a contract to be performed during the life of one of the parties by rendering services in her care, the amount to be paid therefor to be determined by the balance in the bank accounts at the time of her death.

We conclude, therefore, that the trial court committed error prejudicial to the rights of complainee, in rejecting his evidence tending to establish his alleged contract relationship with the deceased concerning services rendered and to be rendered and to be paid out of the joint survivorship bank accounts, in holding the appointment of a guardian terminated the interest of the complainee in such accounts, and in holding the intention of the deceased in giving Hamilton the right to draw money for his services were testamentary in character. We therefore sustain the appellant's claims of error Nos. 1, 2, 3, 4, 5, 7 and 10, and we overrule claims of error Nos. 6, 9 and 11. We overrule the 9th claim of error, based on the weight of the evidence only because the court excluded a great deal of competent evidence so that that question should not be considered until all of the competent evidence is before the court.

For the foregoing reasons the judgment is reversed and the cause is remanded for further proceedings.

Exceptions noted. Order see journal.

HURD, J, THOMPSON, J, concur.