**GUITNER, Admx., Plaintiff-Appellant, v. McEOWEN, Defendant-Appellee, CITIZENS BANK COMPANY et, Defendants-Appellants.**

Ohio Appeals, Second District, Darke County.

No. 714.   Decided March 27, 1954.

Spidel, Staley & Hole, Greenville, for Ollie Guitner, Admx. of the Estate of Harry Guitner, dec'd., plaintiff-appellant, and Ollie Guitner, individually, defendant-appellant.

Goubeaux & Goubeaux, Greenville, for Sadie McEowen, defendant-appellee.

188

## OPINION

By HORNBECK, J.:

This is an appeal on questions of law and fact from a judgment of a three judge court dismissing plaintiff's petition and finding for defendant, Sadie McEowen, on her cross-petition.

The action involved the ownership and right to proceeds of an account with the defendant bank in the name of "Harry Guitner or Sadie McEowen, or the survivor of either." The account was opened in September, 1943, in the name of Harry Guitner only, and was so carried until March 9, 1953, when, under his instructions, the account was changed to a joint account with right of survivorship. At the time of the death of Harry Guitner there were five thousand five hundred dollars to the credit of the account.

The plaintiff claims the right to the proceeds of the account as the administratrix of Harry Guitner, who died on the 24th day of June, 1953, as the result of an injury self-inflicted. Defendant, Ollie Guitner, also asserted her prospective right to a share of the proceeds' as the widow of decedent.

The claim of the plaintiff, and the widow, is that the decedent was at the time of the creation of the joint account incompetent to effectuate the transaction, and that he was then subject to undue influence, neither of which claims is urged in this court. It is further claimed and insisted that decedent established the joint account with the right of survivorship for the purpose of defeating the widow from receiving her distributive share of decedent's estate, and that he retained control of the account. The claim of defendant, McEowen, is that Harry Guitner made a gift inter vivos of the account in its entirety to Sadie McEowen and that, independent of such gift, as a joint owner of the account with right of survivorship, she had full right of joint ownership during the lifetime of Harry Guitner, and to full ownership thereof as survivor upon his death.

Harry Guitner and Ollie Guitner were married on June 10, 1910, and lived as husband and wife until his death on June 24, 1953. During the last several years of his life Mr. Guitner suffered from cancer and, characteristically, it became progressively worse, and there is no doubt that he must have known that death by reason of the disease was inevitable.

The record discloses that there were normal marital relations between the husband and wife, and that she fulfilled all of her obligations as a dutiful consort. There is no claim that she owned any share of the money representative of the account, except as she might be entitled to an equitable interest by reason of her assistance to her husband in his business activities, whereby he acquired the money which went into the account.

The conditions under which the account was opened, and the purposes which Mr. Guitner desired to accomplish, appear from three witnesses whose testimony is substantially as follows:

Thelma Lanich, assistant cashier of defendant bank, says that on the seventh day of March, 1953, Mr. Guitner called at the bank preparatory to a change in his individual account, and returned on the ninth with his book. She testified:

"He asked me if I would put his sister's name on his savings account.

"I said, 'Who is your sister?,' and he said, 'Sadie McEowen.'

"That was all that was said."

Thereupon, she took his book, put the name on it as directed, and stamped the further language, "or to the survivor of either." The book with the endorsement was returned to Mr. Guitner, the transfer was made on the books of the bank in accordance with the change on the pass book. At the time of the transfer, Mr. Guitner made a withdrawal of four hundred dollars from the savings account and placed it to the credit of his checking account.

In what purports to be the By-Laws, Rules and Regulations of the Bank, appearing in the pass book, there is this language:

"In all cases in which the whole amount is withdrawn, the pass book must be given up to the bank."

"This pass book will be depositor's voucher or evidence of his or her deposits in the Bank."

"When money is withdrawn, either in person or on written order of the depositor, this pass book must be presented to the Bank so that the amount of the withdrawal may be entered therein."

There is no evidence that the rules and by laws carried in the pass book were ever formally adopted by the defendant bank, and it fairly appears that deposits could be withdrawn without the presentation of the book upon receipt of a depositor. Mr. Detrick, president of the bank, so testified.

Elmer H. McEowen, husband of defendant, Sadie McEowen, testified that on the 20th of June, 1953, at the request of Mr. Guitner, he took certain papers to a place where the

Township Trustees were meeting, Mr. Guitner being a member of the Board, and on the same day the papers were returned to him. When the papers were returned, Mr. Guitner handed the savings account book to Mr. McEowen and said, "Give this to Sadie," which was done, and that Mr. Guitner said nothing whatever other than that which we have stated. He further testified that on a prior occasion:

"He (Mr. Guitner) told me to tell Sadie that 'I have put some money in the Ansonia Bank so that if anything happens to me that she can draw it.'"

and he is of the opinion that this conversation occurred some time in March.

Sadie McEowen testified that on Saturday before Mr Guitner died on the 24th of June, she had received the pass book from her husband, who informed her that Mr. Guitner had said, "Give this to Sadie." That she had theretofore discussed the matter with Mr. Guitner, that he had sent her word:

"'that he had put some money in my name in the Ansonia Bank for me to do as I seen fit and divide with my brothers and sisters; that he wanted his side of the house to have a little of what he had and he knowed if he did not fix it before he died that Ollie would not give us a dollar.' That she, of course, was not to make the division until after he had died."

That he also said, "You or I, ary one, can draw that money."

The rights of the parties may be determined upon the evidence which we have heretofore stated. In our opinion, it establishes that Mr. Guitner created a joint and survivorship account with the defendant bank; that thereupon the persons named in the designation, namely, Harry Guitner and Sadie McEowen, were joint owners of that account and that the survivor was entitled to any proceeds remaining upon the death of the other. That such status was then created by the contract between the bank and Harry Guitner. **In re Estate of Hatch, 154 Oh St 149.** That it was for the benefit of another, Sadie McEowen. **Rhorbacker Exr. v. The City Building Assn., et al., 138 Oh St 276.** Decedent retained no right of revocation; indeed his act was irrevocable. **Flanders v. Building and Loan Co., 45 Oh St 108; O'Brien v. O'Brien, 112 Oh St 202.** The amount to the credit of the account at the time of the transfer had been deposited by Mr. Guitner, and his transfer to a joint account was a gift to Sadie McEowen of a joint ownership, and as it was an undenied benefit to the donee it will be presumed to be accepted by her. **Rhorbacker, Exr. v. The City Building Assn., et al., supra.** The establishment of the joint account having been completed, Sadie McEowen was thereby vested with the joint ownership, whether or not she had possession of the pass book. **McElroy v. Albany**

Savings Bank, 8 App. Div. 46, 40 N. Y. S. 422, cited with approval in **Cleveland Trust Co. v. Scoby, 114 Oh St 252.** The president of defendant bank testified that it would pay from the account upon Mrs. McEowen's order.

At the time of the transfer of the account, the wife of Harry Guitner was not in the status of his creditor, and he had full right to make the gift during his life time. **Hayes v. Lindquist, 22 Oh Ap 58.** The rights of Sadie McEowen in the account having been fixed during the life time of decedent, his expressed desire as to how she should divide the proceeds upon his death did not affect her interest therein. If the status of Sadie McEowen was that of a trustee, which seems to be her construction of her interest, she took legal title, and the beneficiaries equitable title, at the time that the account was created.

The status of a holder of a joint account with right of survivorship is no longer an open question in Ohio. Cleveland Trust Co. v. Scoby, supra. **Oleff, Admr. v. Hodapp, Gdn., 129 Oh St 432,** in the first syllabus of which it is said:

"A joint and survivorship account entered into by and between two parties, as provided by §9648 GC, is a contract inter vivos, carrying a present, vested interest, and can in no wise be affected by the laws of descent and distribution."

And in the first and third syllabi of **Sage v. Flueck, 132 Oh St 377:**

"(1) Where a joint bank account is, by the creator thereof, made 'payable to either or the survivor,' the right of survivorship vests in the joint depositors by virtue of contract."

"(3) Upon death of the creator of a joint and survivorship bank account, the surviving joint depositors have a right to the balance remaining in the account to the exclusion of the personal representative of such decedent."

We have examined the cases cited by counsel for appellants wherein it is held that a husband may not by a devise, still retaining title, dispose of his personal property with intent to bar his wife of her distributive share in his estate. Here the creator of the account retained only his joint interest during life, according to its terms. The evidence does not support the contention of the appellant that the creation of the account was an attempt to make testamentary disposition of the subject matter thereof.

We briefly consider some of the cases cited by appellant. **In re Estate of Copeland, 74 Oh Ap 164.** The money, the subject of the claimed gift, was in a lock box rented by the depositor, the key to which (although left with the bank) was never beyond access to and control of the depositor. No relationship of debtor and creditor was established between

the bank and the depositor. In **Union Properties, Inc. v. Trust Company, 152 Oh St 430,** wherein it was held that the "realities of ownership" in an account joint in form may be shown, Judge Zimmerman points out that no question of survivorship was presented, but the right, intention, and attitude of the depositors during their joint lives to a subsisting account. **In re Estate of Fulk, 136 Oh St 233,** determined the intent of the depositors to be that each had the right of survivorship, although the formal terms of the deposit did not so provide. **Hayes, Admx. v. Lindquist, 22 Oh Ap 58.** The court found that the alleged transfer by the husband of the stock, subject of the controversy, was in fraud of his wife's rights, and that he did not part with absolute dominion over the stock. The court held that the rule that the husband may dispose of his personal property during his life time without fraud on wife's rights applies only to absolute transfers. **Boles v. The Toledo Trust Company, Exr., et al., 144 Oh St 195.** The husband attempted to bar his wife of distributive share which she would have enjoyed at his death, but he retained the right of disposition and control of the property up to the time of his death. The same situation obtained in **Rose v. Rose, 34 Oh Ap 89.**

Although we determine this case de novo, we have examined the findings of fact in the trial court, and are in accord therewith. We are not satisfied that the record supports the conclusion that there was a gift inter vivos of decedent's share of the account to defendant, McEowen. Decedent's statement to Mrs. McEowen that "ary one can draw that money" disclosed his full appreciation of the right of both parties to the account. At all times after the account was opened defendant, McEowen, had an equal right with decedent to the possession of the pass book. Its surrender with the direction only "Give this to Sadie," without more, did not clearly disclose his intention to then make an outright gift of his share. **Polley v. Hicks, 58 Oh St 218.** Nor was there anything that he had theretofore said respecting the account or his purpose in setting up joint ownership sufficient to establish a present intent to divest himself of all right in the account. However, the delivery of the pass book was further evidence, if any were needed, that decedent did not retain any control or interest in the account at variance with the terms under which it was opened. A gift inter vivos was not necessary to defendant, McEowen's full ownership as survivor of decedent of the proceeds of the joint account.

The judgment here will be the same as in the Common Pleas Court.

WISEMAN, PJ, MILLER, J, concur.