## IN RE ESTATE OF VOEGELI.*

---

*Motion to certify the record overruled, May 6, 1959. Appeal dismissed, 169 Ohio St., 237.

372

(No. 5158—Decided February 16, 1959.)

*Messrs. Ray & Diller,* for appellants.
*Messrs. Swartzbaugh, Moor & Longthorne,* for appellee.

FESS, J. This is an appeal on questions of law from an order of the Probate Court overruling exceptions to the inventory of the estate and holding that six deposit accounts in The Home Building and Savings Company of Toledo, Ohio, were not joint and survivorship accounts and were therefore properly included in the inventory as assets of the estate.

Emil Voegeli died intestate on August 1, 1958, leaving Emily Voegeli his surviving spouse and six children by a prior marriage, all adults except Sandra Helen Voegeli, fifteen years of age. Emil and Emily Voegeli were married on August 9, 1952, and the accounts in question were opened by the decedent after such marriage.[1] Emil Voegeli, for some years prior to his decease, had served as a director of the institution. Upon separate exceptions filed on behalf of the minor child, her account, by consent of counsel for the administratrix made in open court, was stricken from the inventory. Except as indicated in the footnote, the remaining accounts involved in this appeal were each opened by the decedent, who signed cards furnished by the bank, each having the same printed form and identical provisions as follows:

---

[1]The exhibits disclose that the Marylynn Voegeli account was opened September 20, 1943, having a balance of $22.07 on December 1, 1952, prior to a deposit of $2,500. Substantial deposits and withdrawals were thereafter made, resulting in a balance as of June 30, 1958, in the sum of $13,527.93. Signature card on this account was also dated December 1, 1952, and was signed by Emil Voegeli and Marylynn Voegeli.

"Name (name of child) or

Emil Voegeli or survivor

"We, the undersigned, do hereby severally agree to be governed and bound by the Constitution, Bylaws, Rules and Regulations of The Home Building and Savings Company of Toledo, Ohio, now in force or that may hereinafter be in force.

"We further agree that this pass book No. .... in The Home Building and Savings Company of Toledo, Ohio, and any earnings thereon is the joint property of the undersigned and shall so remain during our joint lives and may be withdrawn at any time by any one or more either of us and upon the death of one or more of the undersigned the deposit and all accrued earnings thereon shall absolutely and unqualifiedly become the separate property of the survivor or survivors of us the same as if all the deposit was originally made by the survivor or survivors, free from any right, title or claim of the heirs, legatees, legal or personal representatives and creditors of the deceased and the right and title of the survivor or survivors of us thereto shall not be affected by the pass book being in the possession of the deceased or another at the time of said decease. Our intentions expressed herein can not be varied by any declarations either verbal or written to the contrary. Any withdrawals shall be a valid acquittance of the company. Interest rate to be determined semi-annually by the board of directors of said company.

Toledo, Ohio ...... (19..).

.................................................................

.................................................................

Joint and Survivorship Account                    "

At his death, the passbooks for the accounts were found in the decedent's safe, which had to be forcibly opened with a blow torch.

The several accounts involved in this appeal are:

1. Account No. 42124 in The Home Building and Savings Company, joint and survivorship account in the name of Mary-

lynn Voegeli or Emil Voegeli or survivor in the amount of $13,527.93, dated December 1, 1952.

2. Account No. GE296 in The Home Building and Savings Company, joint and survivorship account in the name of Emil Voegeli or William Voegeli or survivor in the amount of $22,398.09, dated December 19, 1956.

3. Account No. 59494 in The Home Building and Savings Company, joint and survivorship account in the name of Donald E. Voegeli or Emil Voegeli or survivor in the amount of $7,806.59, dated February 20, 1953.

4. Account No. 59495 in The Home Building and Savings Company, joint and survivorship account in the name of Frederick J. Voegeli or Emil Voegeli or survivor in the amount of $7,806.69, dated February 20, 1953.

5. Account No. 59496 in The Home Building and Savings Company, joint and survivorship account in the name of William T. Voegeli or Emil Voegeli or survivor in the amount of $7,806.69, dated February 20, 1953.

6. Account No. 59497 in The Home Building and Savings Company, joint and survivorship account in the name of Barbara Voegeli Peltier or Emil Voegeli or survivor in the amount of $7,806.69, dated February 20, 1953.

Account No. GE296 was opened at a branch office of the company. The others were made at the main office.

The signature card on account No. GE296 was signed by Emil Voegeli and William T. Voegeli, and the card on account No. 42124 was signed by Emil Voegeli and Marylynn Voegeli. The cards on the other four accounts bear only the signature of Emil Voegeli. The ledger sheets, as well as the passbooks, of these four accounts, having balances of $7,806.69, each disclose identical deposits from February 20, 1953, to June 30, 1958, with no withdrawals.

Upon the ledger sheet of the Sandra Voegeli account appears the following in capital letters:

"GIVE OUT NO INFORMATION TO ANYONE EXCEPT

NO WITHDRAWALS WITHOUT PASSBOOK—EMIL VOEGELI."

Upon the Marylynn Voegeli ledger sheet appears:

"Give out no information to anyone except Emil Voegeli."

Upon the ledger sheet of the William Voegeli account No. GE296 (opened December 19, 1956) appears no similar legend. The sheet discloses a withdrawal of $10,000 from this account by Emil Voegeli on August 12, 1957.

The ledger sheets of the four identical accounts bear the following legend: "Give out no information to anyone except Emil Voegeli." Inferentially, the legends were placed upon the sheets by direction of the decedent. An officer of the bank called as a witness for the administratrix had no knowledge of the source of the appearance of the legends on the ledger sheets. An employee of the bank who dealt directly with the decedent at the time several of the accounts were opened was not called to testify. The evidence fails to show whether the legends were placed on the sheets concurrent with the opening of the accounts or thereafter, and there is no evidence tending to show that the instructions were made with the knowledge or consent of the children. An officer of the bank testified that frequently a joint and survivorship account is opened by the depositor signing the card and the codepositor signs at a later date and that the bank recognizes the account as joint and survivorship prior to its signing by the codepositor, but does not permit withdrawal by the latter until after he has signed the card. The officer also stated that, except under unusual circumstances where the amount is small and the depositor well known, no withdrawals are permitted without presentation of the passbook. The rules and regulations of the company were not introduced.

The inventory and appraisement of the gross estate amounts to $293,752.21, including the seven joint and survivorship accounts totalling $82,895.09. The six accounts involved in this appeal total $67,152.68. In addition to holding shares of the company appraised at $20,000, the decedent had four other savings accounts in the company, presumably not joint, totalling $46,343.03.

The status of a codepositor of a joint account, with right of survivorship, is unquestionably established in Ohio. *Cleveland Trust Co.* v. *Scobie, Admr.,* 114 Ohio St., 241, 151 N E., 373, 48 A. L. R., 182; *Oleff, Admr.,* v. *Hodapp, Gdn.,* 129 Ohio St., 432, 195 N. E., 838, 98 A. L. R., 764; *Sage, Admr.,* v. *Flueck,* 132 Ohio St., 377, 7 N. E. (2d), 802; *Berberick* v. *Courtade,* 137

Ohio St., 297, 28 N. E. (2d), 636; *Rhorbacker, Exr.*, v. *Citizens Bldg. Assn. Co.*, 138 Ohio St., 273, 34 N. E. (2d), 751; *In re Estate of Hatch*, 154 Ohio St., 149, 93 N. E. (2d), 585; *In re Estate of Kessler*, 85 Ohio App., 240, 85 N. E. (2d), 609; *Gladieux* v. *Parney*, 93 Ohio App., 117, 106 N. E. (2d), 317; *In re Estate of Jones*, 68 Ohio Law Abs., 282, 122 N. E. (2d), 111; *Guitner, Admx.*, v. *McEowen*, 99 Ohio App., 32, 124 N. E. (2d), 744. Cf. *Bauman* v. *Walter*, 160 Ohio St., 273, 116 N. E. (2d), 435, distinguishing the *Scobie* and other cases, *supra*.

The Supreme Court has said that Section 1105.09, Revised Code, dealing with joint and survivorship accounts, was enacted solely for the benefit and protection of banks (*Union Properties, Inc.*, v. *Cleveland Trust Co.*. 152 Ohio St., 430, 433, 89 N. E. [2d], 638, and *Nichols* v. *Metropolitan Life Ins. Co.*, 137 Ohio St., 542, 31 N. E. [2d], 224) and is not helpful in determining the rights in joint deposits of a husband and wife as between themselves. *Bauman* v. *Walter, supra* (160 Ohio St., 273), at page 275. It is to be noted, however, that in the *Bauman case* the court was dealing with joint (not survivorship) accounts. Notwithstanding Section 1105.09, Revised Code, may have been enacted for the protection of the bank, it provides in no uncertain terms that when a deposit is made in the name of two or more persons, payable to either or the survivor, such deposit or any part thereof may be paid to either of said persons, whether the other is living or not. It therefore seems to us that the section imports that the interest of the codepositor shall vest at the time the deposit is made and authorizes the bank to make payment on demand to either depositor, whether the other be living or dead. At least, it is a statutory recognition of the right of either depositor to receive payment of a part or the whole of such deposit during life and the right of the survivor to the deposit upon the death of the other. See, also, *Oleff* v. *Hodapp, supra* (129 Ohio St., 432), where a similar statute was held applicable. In passing, it may be observed that the statute imposes no requirement that the passbook be presented as an incident to withdrawal, stating that "the receipt or acquittance of the person paid is a sufficient release and discharge of the bank for any payments so made."

It has been specifically held that the ownership of the funds in a joint and survivorship account, upon the death of one of the parties, passes to the survivor by virtue of the contract. *In re Estate of Hutchison,* 120 Ohio St., 542, 166 N. E., 687; *Sage, Admr.,* v. *Flueck, supra; In re Estate of Hatch, supra; In re Estate of Kessler, supra.* See comment distinguishing the *Scobie* case in *Bauman* v. *Walter, supra* (160 Ohio St., 273), 276-277. The funds do not pass as an incident to joint tenancy (not recognized in Ohio), *Sage, Admr.,* v. *Flueck, supra,* or necessarily upon the principle of survivorship. *In re Estate of Burns,* 21 Ohio Law Abs., 148. Since title to the deposit passes to the bank and a debtor-creditor relationship is created, the depositor is enabled to so contract with the bank that another be vested with a present interest in the debt that will, unless cancelled or revoked by the depositor and the codepositor, survive the death of the depositor, and the relationship between the depositor and the survivor is not controlling. *In re Estate of Copeland,* 74 Ohio App., 164, 58 N. E. (2d), 64. Such an arrangement does not have the attributes of a testamentary disposition. *Cleveland Trust Co.* v. *Scobie, supra; Oleff* v. *Hodapp, supra; Sage, Admr.,* v. *Flueck, supra; Guitner* v. *McEowen, supra.*

Prior to *Rhorbacker, Exr.,* v. *Citizens Bldg. Assn. Co.* (1941), *supra* (138 Ohio St., 273), it had been held that a joint bank deposit payable to the survivor did not amount to a testamentary disposition in case of death of the depositor on the theory that *at the inception of the deposit a contract was entered into between two persons (depositor and codepositor) to whom the deposit was made payable.* But in the *Rhorbacker case* the court proceeded to base its decision upon the *contract of deposit between the building association and the depositor* alone and further held that, since the transaction possesses some of the characteristics of a third party beneficiary contract, consideration passing between the depositor and the one surviving is not necessary, and full assent to the contract by such survivor may be presumed, the contract being one of advantage without burden. This principle was reaffirmed in an opinion written by the dissenting member of the court in the *Rhorbacker case,* in *In re*

*Estate of DiSanto,* 142 Ohio St., 223, 51 N. E. (2d), 639. Furthermore, delivery, which must accompany an ordinary gift such as is present in the so-called passbook cases, is rendered unnecessary because the execution of the joint account deposit contract between the depositor and the bank supplies the essentials of a completed gift. *In re Estate of Copeland, supra* (74 Ohio App., 164). Likewise, absence of the codepositor's signature becomes unimportant except as a reasonable and practical requirement of the bank to assure proper identification of the codepositor.

In *Sage, Admr.,* v. *Flueck, supra* (132 Ohio St., 377), it was said that the mere fact that one held exclusive possession of the passbook, such as did the decedent in the instant case, while pertinent, is not decisive that no right of survivorship was intended. See, also, *Vollmer* v. *Vollmer,* 47 Ohio App., 154, 190 N. E., 588. In the instant case the decedent, by the express terms of his contract, provided that "the right and title of the survivor or survivors of us shall not be affected by the passbook being in the possession of the deceased or another at the time of said decease." Under such a contract, the depositor creates and vests in the codepositor *in praesenti* a joint interest in the deposit with unlimited right to draw upon it during their mutual lives, and with a survivorship right in the entire balance upon the death of the other. *Sage, Admr.,* v. *Flueck, supra,* at page 381. And the rights of the parties are determined and fixed by contract *at the time* the deposits are made pursuant thereto, and death thereafter does not abrogate the rights of the parties arising from such contract. *Berberick* v. *Courtade, supra* (137 Ohio St., 297), at page 300. See, also, *In re Estate of Fulk,* 136 Ohio St., 233, 239, 24 N. E. (2d), 1020, holding that even in the case of a joint account the transaction was complete when the contract was made and the money deposited by the husband and wife, and the rights of the parties were fixed at that time. Thus, an unexercised power of revocation reserved in the contract does not prevent the passing of ownership of the balance to the survivor. *Cleveland Trust Co.* v. *Scobie, supra* (114 Ohio St., 241).

In general, it seems that in the absence of the signing of the

signature card by both the depositor, who contributed all the money to the joint account, and the codepositor, parol evidence is admissible to show the true intent with which the account was opened or the nature of the account as joint tenancy, a gift or a trust. 33 A. L. R. (2d), 571; *Held, Admr.,* v. *Myers,* 48 Ohio App., 131, 192 N. E., 540; *Union Properties, Inc.,* v. *Cleveland Trust Co., supra* (152 Ohio St., 430); *Steiner, Admr.,* v. *Fecycz,* 72 Ohio App., 18, 50 N. E. (2d), 617 (involving fraud); *Ferguson* v. *Deuble,* 27 Ohio Law Abs., 533 (involving fraud); *In re Estate of Hatch, supra* (154 Ohio St., 149), at page 152; *In re Estate of Jones, supra* (68 Ohio Law Abs., 282), 288; *Guitner, Admx.,* v. *McEowen,* 99 Ohio App., 32, 124 N. E. (2d), 744.

In a hearing upon exceptions to an inventory to determine the ownership of a joint account (not in terms a survivorship account) parol evidence of the secretary of the loan association who prepared the certificates of deposit at the joint request of the husband and wife was held to be admissible, not to vary the terms of the contract of deposit, but to explain its ambiguity and the circumstances under which it was made. *In re Estate of Fulk, supra* (136 Ohio St., 233). On the other hand, in *Oleff* v. *Hodapp, Gdn., supra* (129 Ohio St., 432), the court referred to the fact that the written contract is presumed to state the intent of the parties thereto, so long as it is clear and unambiguous and said: "The contract is clear, its words are plain, and it will not admit of parol testimony to vary its terms." And in *Sage, Admr.,* v. *Flueck, supra* (132 Ohio St., 377), the court found the intention of the decedent was clearly expressed in her written contract of deposit, and that "oral testimony to contradict such written expression of intention is incompetent." It would therefore appear that in a situation such as is presented in the instant case, wherein the terms of the contract of deposit are clear and unambiguous, parol evidence tending to show a contrary intention is inadmissible and has no probative effect. Likewise, in his contract of deposit, decedent provided: "Our intentions herein expressed cannot be varied by any declaration either verbal or written to the contrary."

In the instant case, the administratrix did not elect to testify or offer evidence tending to show an intention of the dece-

dent contrary to his expressed intention to create joint and survivorship accounts. Our review is therefore limited to a construction of the exhibits and the modicum of testimony introduced at the hearing below, and we are not required to determine whether parol evidence was admissible tending to contradict the clear, concise and unambiguous language employed by the decedent incident to his depositing the funds in the several accounts.

As above indicated, retention of the passbooks does not defeat the right of the codepositors as survivors to the funds in the accounts. Even upon the assumption that the instructions were placed upon the ledger sheets at the instance of the decedent concurrent with the opening of the accounts, such instructions do not vary, contradict or detract from the express language upon the signature cards. Since the contracts of deposit were in writing and signed by the decedent and the instructions on the ledger sheets were not signed, such instructions may not contradict the express provisions of the contracts of deposit. *Oleff* v. *Hodapp, Exr., supra* (129 Ohio St., 432), holding that the contract of investiture being in writing, duly signed by the parties, the divestiture should likewise be in writing and duly signed. The phraseology employed negatives any intention to make a testimonial disposition contrary to law. When the decedent created the joint and survivorship accounts, the codepositors' right to survivorship vested *in praesenti*. He retained the right of withdrawal and on several occasions exercised it. He retained the passbooks until his death and presumably instructed the company to give out no information to anyone except himself and ''No withdrawals without passbook.'' The fact that several of the children may not have known of the accounts is unimportant. *Rhorbacker* v. *Citizens Building Assn. Co., supra* (138 Ohio St., 273); *Arthur* v. *Witmeyer, Exr.,* 39 Ohio Law Abs., 505. These circumstances may tend to show that decedent desired to retain complete control of the accounts during life, but they do not contradict or overcome the clear and unambiguous intention of decedent expressed in his contracts of deposit to create a then vested survivorship interest in such accounts in his children, which would inure to them or survivors upon his death.

There being no substantial probative evidence to support the order of the Probate Court, the judgment is reversed and the cause remanded thereto with directions to sustain the exceptions and for further proceedings according to law.

*Judgment reversed.*

SMITH and DEEDS, JJ., concur.

*Motion to certify the record overruled, June 10, 1959,