DARAMUS, PLAINTIFF, *v.* HATEGAN, EXR., ET, DEFENDANTS.

Probate Court, Cuyahoga County.

No. 646903.  Decided October 30, 1964.

Mr. *Joseph W. Bartunek*, for plaintiff.

Mr. *John J. Sibisan*, for Rev. Vasile Hategan, Extr., St. Mary's Romanian Orthodox Church, Romanian Orthodox Episcopate of America Rev. Vasile Hategan.

*Messrs. Burke, Haber & Berick*, for The Ohio Savings Association.

*Messrs. Lawrence & Bates*, for Second Federal Savings and Loan Association of Cleveland.

MERRICK, P. J.   This matter is before this Court on appeal from a decision of a permanent referee and has been perfected in accordance with Rule 30-G of this court.   Factually, counsel, the referee and the writer of this opinion have been unable to find an Ohio case exactly parallel.

This is a declaratory judgment action questioning the owner-

ship of two bank accounts which were included in the inventory in the instant estate.

One of the two savings accounts was in Second Federal Savings and Loan Association of Cleveland, and showed a balance at the time of the decedent's death of $10,965.47. The other account with The Ohio Savings Association of Cleveland showed a balance of $8,856.01 as of the date of the decedent's death. These will be referred to in this opinion as Second and Ohio.

The petitioner claims that these accounts should not have been included in the inventory and appraisement because they were joint and survivorship savings accounts, and the petitioner, being the survivor, is entitled to the proceeds of both accounts.

The defendants, with the exception of Second, take the position that the joint and survivorship accounts were never actually created and that both accounts were the individual assets of the decedent, and, therefore, assets of his estate. Second merely claims that it is in doubt as to the ownership of the funds.

It is an undisputed fact that at one time the decedent maintained individual savings accounts with both associations and the question presented to this Court is whether such accounts were changed to joint and survivorship accounts with the petitioner, prior to the decedent's death.

I will first take up the account with Ohio. The Petitioner claims that on March 1, 1963, Dumetroff, the decedent herein, and Daramus, together proceeded to the Main Office of Ohio, where they obtained a signature card on which was printed the following: "This account is to be a joint account—either may draw—balance at death of either, payable to survivor. We agree and declare that all funds, now, or hereafter deposited in this account are, and shall be our own joint property and owned by us, as joint tenants * * *"

The decedent and the petitioner both signed the card in the presence of a teller of Ohio. They departed taking the signed joint and survivorship signature card with them. Within a few months, and following the decedent's death, the petitioner proceeded to the Ohio Main Office, where he was referred to a branch office. A teller at the branch office stamped the reverse side of the joint and survivorship signature card, and

advised the petitioner that Dumetroff must sign the reverse side before the funds could be transferred to the petitioner. The language stamped on the reverse side of the signature card states:

"I hereby request and authorize the Ohio Savings Association of Cleveland, Ohio, to add the name of ................ to Savings Account No. ....... making it payable to either of us, or the survivor.

Date

Signature ......................"

It is contended that certain terms and conditions must be complied with and fulfilled before Ohio accepts an account.

It is further urged that a basic requirement of Ohio is the filling out of a stamped form on the back of the signature card setting up the joint account. That form requires and authorizes Ohio to transfer funds from an existing account to a new account. Ohio, as a matter of procedure, requires completion of this form before transferring a single account to a joint account. It is further contended that:

1. Ohio did not file any signature cards for its records.

2. The passbook was never changed to show a joint and survivorship account, and

3. The form on the back of the signature card required by the rules of Ohio was never completed.

The record discloses that when the petitioner and the decedent signed the signature card they were told to return at a future date with the passbook. The petitioner or the decedent never returned with the passbook. The rules of Ohio printed on the decedent's passbook and expressly consented to by him in writing when he opened his individual account, states:

"The undersigned, the Ohio Savings Association, may treat the holder of record as the owner for all purposes, without being effected by any notice to the contrary until this pass book is transferred on the books of the undersigned. Pass books will not be transferred unless and until the transferee has made proper application, and has been accepted as a depositor of the undersigned."

Now, to the account with Second. April 1, 1963, the petitioner and the decedent Dumetroff proceeded to the Main Office of Second, where they obtained and both signed a signature

card. After signing the card they departed, taking the card with them. About a month later, after the death of Dumetroff, the petitioner returned to the Second with the signature card. Second refused to release the funds until there was a judicial determination of ownership.

No change was made in the records of Second after the appearance of the decedent and the petitioner at its office. The pass-book remained in the possession of the previous single owner, the decedent. The Chairman of the Board of Directors of Second testified that when the petitioner and the decedent departed from the Main Office of the Association, they took the signature care with them and stated that they would return with the passbook at a later date. However, they never returned with the passbook. The Chairman further stated that the single account of the decedent with Second is still presently an open account on its books. The testimony was quite clear that, had the passbook been produced to the Second, it would have added an additional name in the old passbook or issued a new passbook. Second then would have changed its record to show the new joint and survivorship account. This position is also taken by Ohio which contends the change as to the account was never made on the records for the reason that the passbook evidencing such account was never presented to it by the plaintiff or Bobby Dumetroff in his lifetime.

As a result of the evidence introduced by the two savings and loan institutions, it appears that Ohio has definite regulations which require a change on the passbook before it will recognize one as the owner of the account, while Second has no definite regulations on the subject but does have a policy which it follows in such cases. On the passbook of Second, it is stated: "This book must be presented for all withdrawal requests." It is a fact that the decedent never complied with this stage of the procedure which Second follows with reference to joint and survivorship accounts. The original account of the decedent, Bobby Dumetroff, is still on the records of the Second as his individually.

The joint and survivorship contracts were executed by the two friends at each bank in the presence of an authorized staff member. The forms were supplied and the agreement fully executed. One set carried the prevailing balance,

The writer of this opinion is not without notice of the wording and intended effect of Section 1105.09, Revised Code, which provides that a balance in a bank account in the name of two or more persons may be paid to either and thereafter the bank is released from liability to pay the other, whether living or not. This statute does not answer our current question, because it has been held that this section is for the protection of the bank and cannot be interpreted to change the contractual relationship of the account owners. *Fecteau* v. *Bank*, 171 Ohio St., 121; *Bauman* v. *Walter*, 160 Ohio St., 273; *Bank* v. *Scobie*, 114 Ohio St., 241; *In re Estate of Voegeli*, 108 Ohio App., 371; *Gall* v. *Bank*, 57 Ohio App., 168.

The joint and survivorship contracts having been executed and the writings returned to the co-signers with instructions to return with the passbook, there must be a conclusion that all that is required to make the contract as between the parties has been consummated. Is it then necessary to comply with instructions, rules or practice of the bank?

The transfer of rights or an interest in a bank account can be consummated without delivery of the bank book to the bank or an additional party. This theory is pointed out in the Ohio Supreme Court decision in *Bank* v. *Scobie, supra*. This case cites out of state holdings and at page 251, Judge Allen's opinion declares:

"These holdings also apply even in the case where the bank book has been retained in the possession of the donor. . . . However, the authorities do not ground their conclusions upon the proposition that the bank book must be left in the possession of a third party in order to create a joint interest in the deposit in a transaction of this kind. It is generally held that delivery of the bank book is not a prerequisite to the creation and transfer of a joint title in a savings deposit . . . . (further at page 253). However we prefer to place our holding upon the ground above indicated. After all, upon deposit of an account, the bank is constituted a debtor, and when the depositor orders the bank to pay himself or another, upon order of either party, notifies the second party of the completed transaction and secures her signature, evidencing assent to the arrangement, he has created in the second party by contract a joint interest in his right to the deposit equal to his own."

At page 376 in Judge Fess' opinion in the case of *In re Estate of Voegeli, supra,* we find this observation by the Judge:

"In passing, it may be observed that the statute imposes no requirement that the passbook be presented as an incident to withdrawal . . . . (further at page 380). As above indicated, retention of the passbooks does not defeat the right of the co-depositors as survivors to the funds in the accounts. Even upon the assumption that the instructions were placed upon the ledger sheets at the instance of the decedent concurrent with the opening of the accounts, such instructions do not vary, contradict or detract from the express language upon the signature cards."

Consolidating the theories cited herein, it must be recognized that the crux of the entire question revolves around the agreement of the individuals, notwithstanding the rules, regulations, assent or even knowledge on the part of the bank. It is obvious that the contract could be executed by the individuals in their own way, on their own stationery, just so long as the agreement spelled out the desire of joint and survivor ownership.

The decision of the referee is reversed and judgment will be entered on the first cause of action, declaring that the balance in the account at the Second Federal Savings and Loan Association of Cleveland, at the time of the death of Dumetroff is the property of the plaintiff, petitioner. On the second cause of action, judgment will be entered declaring that the balance in the account at the Ohio Savings Association of Cleveland, at the time of the death of Dumetroff is the property of the plaintiff, petitioner.

Exceptions noted.

Counsel may submit a journal entry according to the conclusions of this opinion.