## HAYES, ADMX., *v.* LINDQUIST ET AL.

*Evidence—Action by widow to recover stock certificates from husband's sister—Evidence of plan to deprive widow of other property, admissible—Occurrences in attorney's office admissible, where client testifies thereto—Conversation between attorney and client concerning proposed future wrongdoing, not privileged—Husband places stock in sister's name to defeat wife's rights—Sister not entitled to stock controlled by deceased brother—Disposition of personalty by husband without fraud on wife's rights—Rule applies only to absolute transfers.*

1. Where sister and widow of deceased claimed certain stock which was in sister's name, evidence as to other property showing plan under which either deceased or sister could claim it *held* admissible.

2. In contest between sister and widow of deceased as to certain stock in sister's name but of which deceased had control, evidence as to what occurred in lawyer's office, where sister took property of deceased after his death, *held* proper, where sister was willing to testify relative thereto, and consented that attorney should do so.

3. In action involving claim by decedent's sister to stock in her name, testimony that decedent had inquired of attorney as to paper by which he wished it to falsely appear that she owned certain stock *held* not privileged.

4. Sister of deceased *held* not entitled to stock of corporation which was in her name, but had been controlled by deceased, who had received all income during lifetime, and had placed it in her name to prevent wife from getting it after his death.

5. Rule that husband may dispose of personal property without fraud on wife's rights, unless she is *quasi* creditor, *held* applicable only to absolute transfers.

(Decided March 29, 1926.)

APPEAL: Court of Appeals for Lucas county.

*Messrs. Fraser, Hiett & Wall,* and *Mr. L. W. Storey,* for plaintiff.

*Messrs. Boggs & Doty,* and *Mr. Allen J. Seney,* for defendants.

RICHARDS, J. This action involves the ownership of two certificates of stock in the Hayes Music Company; No. 32 being for 43 shares of stock, and No. 36 for 14 shares of stock in the company. The plaintiff contends that this stock is a part of the assets of the estate of Paul C. Hayes, while the defendant May Lindquist, a sister, contends that she is the owner of the stock. She insists that he gave to her certificate No. 32 for 43 shares, and that she purchased certificate No. 36 for 14 shares.

The court of common pleas found for the plaintiff, and from that finding and judgment the defendants appealed.

The transcript of the oral testimony embraces more than 700 pages, and there are a very great many exhibits. It will not be possible in this opinion to do more than summarize the controlling facts.

The Hayes Music Company is an Ohio corporation, doing business in the city of Toledo, and Paul C. Hayes, in his lifetime, was the president and manager of the company. Only 88 shares of stock had been issued, and of this number Paul C. Hayes was the owner of 83 prior to the first of August, 1920. About that date he surrendered part of his stock, and caused to be issued to his sister, May Lindquist, a certificate, No. 32, for 43 shares, and this certificate was signed by the president and secretary of the company, and delivered to her, was

never indorsed by her, or assigned by her in writing, and continued to stand in her name on the books of the company up to the time of the death of Paul C. Hayes.

In February, 1922, the defendant May Lindquist was residing in Cleveland, and in that month her brother sent her a check for $1,555, which she deposited in a Cleveland bank to her account, where she already had on deposit about $600. Shortly after the receipt of that check she wrote to her brother sending him a check on her account in that bank for $1,400, in payment, as she says, for 14 shares of stock in the Hayes Music Company. He thereupon caused to be made out to her a stock certificate, No. 36, for 14 shares, and mailed the same to her. Upon its receipt she wrote her name on the back of the certificate, at the end of a blank assignment, and mailed the certificate back to her brother, and this certificate continued to remain in her name on the books of the company until the death of Paul C. Hayes. Both certificates of stock were kept in a safety deposit box in the People's Savings Association in Toledo until after the death of Paul C. Hayes. This safety deposit box was in the name of both Paul C. Hayes and May Lindquist, so that both had the right of access thereto, but Mrs. Lindquist never did in fact gain access to the same until the day following her brother's death. She was elected one of the directors of the Hayes Music Company in 1922, and continued to remain a nominal director until the death of her brother.

No dividends were ever paid on the capital stock of the Hayes Music Company from the time of the issuance of these certificates, and it was essentially

a one-man company, being wholly controlled and managed by Paul C. Hayes, who, in lieu of dividends, drew from the company the surplus earnings, as he saw fit, but the defendant May Lindquist drew nothing from the company.

On February 3, 1919, the plaintiff, Inez Hayes, who is the widow of Paul C. Hayes, brought an action against him for divorce and alimony, and this action seems to have been settled in March, 1920. On September 23, 1920, she commenced another action against him for the same purpose, and, after the settlement of that action, she began still a third action for divorce and alimony on November 13, 1920. This latter action was settled in December of 1920, and their differences, financial and otherwise, apparently adjusted.

In March, 1921, he sent the petitions in these divorce cases to his sister, and wrote her as follows: "Should Inez Hayes wonder why practically everything is yours and John's, you can tell her that she forced or coerced me to deed the property at 2624 Scottwood to her, and the inclosed petitions are proof enough."

A great mass of evidence has been introduced which leaves no room to doubt that Paul C. Hayes caused the certificates of stock to be executed to his sister because of the actions for divorce and alimony brought by his wife, and because he anticipated the bringing of other like actions. In furtherance of this same plan, he and his sister rented safety deposit boxes in various financial institutions in Toledo in the name of both so that either could have access to the contents, and large sums of money were deposited by him in various banks

in Toledo in such form that either he or his sister could draw the money, and the balance should go to the survivor.

It is insisted that all of this evidence relating to the plan of dealing with property other than the two certificates of deposit is inadmissible, but we think that it is part of one general plan, and that all of the evidence introduced on those subjects is admissible. *Brownell* v. *Briggs,* 173 Mass., 529, 54 N. E., 251.

Paul C. Hayes departed this life on Sunday, June 14, 1925. His sister was then in Cleveland, but she came to Toledo on Monday, and went immediately to the place of business of the Hayes Music Company, where she secured keys to the safety deposit box in the People's Savings Association. After securing those keys, she went to that institution, accompanied by Cora L. Stark, an employe of the Hayes Music Company, and took from the safety deposit box all of the papers and property found therein. This she took to the office of Mr. Frank E. Calkins, an attorney, and stated that she had a bundle of papers that belonged to Paul C. Hayes which she wished to leave with him, as requested by her brother. At the suggestion of Mr. Calkins, a list of the papers was made by a stenographer in his office, and the list described the property as belonging to Paul C. Hayes. Mr. Calkins signed that list and received the papers. A day or two later May Lindquist returned, and claimed as her own a life insurance policy and a piece of jewelry, and he delivered these to her. Three days after he had received the property all of it was returned to her, and she receipted for it on the same list, which de-

scribes it as the property of Paul C. Hayes. In the conversation she stated that she wanted Paul's son, John, a minor child, to have the property. The two stock certificates in controversy were among those papers.

The testimony as to what occurred in Mr. Calkins' office is objected to, but we think it entirely competent. Mrs. Lindquist testified regarding it when called on cross-examination, and stated that she was willing to testify in regard to it as well as she could remember the facts, and was satisfied to have Mr. Calkins testify. She had asked him to act as her attorney, but he had declined to do so. It seems unimportant whether he was acting as her attorney or not, in view of the fact that she voluntarily testified with relation to the transaction and consented that he should testify regarding the same.

Objection was made to the evidence of Frank E. Calkins, attorney, as to the conversation between him and his client, Paul C. Hayes. Hayes sought advice from his attorney relating to a paper which he wished to send to his sister in Cleveland in order to have her sign, so as to make it appear that she was the real owner of the 14 shares of stock which he was about to send to her, although she was not in fact to be such owner. He was advised by his attorney, in substance, that it would not be the right thing to do, and would be a trick and unfair. We think the conversation was not privileged, and that the testimony was competent, as it related to proposed future wrongdoing on the part of the client. Such testimony is competent within the rule announced in *Golner* v. *State,* 19 C. C. (N.

S.), 317, 29 C. D., 290.   28 Ruling Case Law, 569;
40 Cyc., 2373.   However, the admission of that tes-
timony would not alter the result, as the circum-
stances under which she obtained the certificates
clearly appear by other evidence in the case.

While each of the two certificates for stock shows
on its face that she became the owner of it, a care-
ful reading of the evidence in the transcript con-
vinces the court that the execution of these certifi-
cates was not understood by the parties to be ef-
fectual, but was merely illusory and colorable, and
that the delivery was not complete, nor made for
the purpose of passing title to Mrs. Lindquist. The
manifest plan of her brother and herself was to
have this property so held that it could be claimed
by either as circumstances required, and the gift
to her was not complete.   He retained control and
dominion over the property, and received all the
income from the stock during his lifetime, not, how-
ever, by way of dividends, but by withdrawing from
the company all the surplus profits which he chose
to withdraw.

It is undoubtedly true, in a legal sense, that a
wife has no interest in her husband's personal
property during his lifetime, and that he may dis-
pose of it absolutely during his life by sale or gift,
and that this does not constitute a legal fraud on
her marital rights, unless she occupies the position
of a *quasi* creditor, as where she is seeking to
obtain alimony, but this rule only applies to abso-
lute transfers made to take effect during the hus-
band's life.   The limitations of the rule are well
stated in 30 Corpus Juris, 524, as follows:

"It does not apply where the transfer is a mere

device by which the husband, not parting with the absolute dominion over the property during his life, seeks at his death to deprive his widow of her distributive share in his personal property, or where the transfer is made *causa mortis* to defraud the widow of her dower or distributive share in the personalty.''

The principle is stated in 13 Ruling Case Law, 1088, as follows: ''Though there is a conflict of authority as to the validity of a transfer by the husband of his personalty to defeat the rights of his wife when the husband reserves no right therein to himself, still where the transfer is a mere device or contrivance by which the husband, not parting with the absolute dominion over the property during his life, seeks at his death to deprive his widow of her distributive share, there is no substantial conflict of authority that the transfer is invalid as to her.''

Many authorities substantiate this doctrine. Of these we cite the following: *Walker* v. *Walker,* 66 N. H., 390, 31 A., 14, 27 L. R. A., 799, 49 Am. St. Rep., 616; *Smith, Jr.,* v. *Smith,* 22 Col., 480, 46 P., 128, 34 L. R. A., 49, 55 Am. St. Rep., 142; *Smith* v. *Smith,* 24 Col., 527, 52 P., 790, 65 Am. St. Rep., 251; *Leonard* v. *Leonard,* 181 Mass., 458, 63 N. E., 1068, 92 Am. St. Rep., 426; *Brown* v. *Crafts,* 98 Me., 40, 56 A., 213; *Wright, Admr.,* v. *Holmes,* 100 Me., 508, 62 A., 507, 3 L. R. A. (N. S.), 769, 4 Ann. Cas., 583.

The principle that a husband is not permitted to give away his personal property in fraud of his wife's rights is recognized in an opinion by Min-

shall, J., in *Doyle* v. *Doyle, Jr.,* 50 Ohio St., 330, 345, 34 N. E., 166.

*Cleveland Trust Co.* v. *Scobie,* 114 Ohio St., 241, 151 N. E., 373, decided by the Supreme Court March 2, 1926, relates to a bank deposit made to the joint credit of the depositor and another, intended to pass a present joint interest, and can have no bearing on the case at bar.

On the whole case the court is convinced that the plan of putting the stock in the name and apparent possession of Mrs. Lindquist was a mere device, and that Paul C. Hayes never parted, or intended to part, with the ownership of the certificates; that he retained dominion over the property; that the whole transaction was merely colorable and illusory; and that May E. Lindquist holds the title in trust for the estate, which is the real owner.

*Decree for plaintiff.*

WILLIAMS and YOUNG, JJ., concur.