ROSE *v.* ROSE ET AL.

(Two cases.)

(Decided December 6, 1929.)

*Mr. Carl M. Myers,* for Morris J. Rose.

*Messrs. Rockwell & Grant,* and *Mr. Max P. Goodman,* for Selma E. Rose.

*Messrs. Slabaugh, Seiberling, Huber & Guinther,* for Arthur V. Rose, Harold Rose, Martin J. Rose, Herbert Worms, Myrtle Worms, the M. J. Rose Company, and the Economy Furniture Company.

BY THE COURT. The parties occupy the same relative positions in this court that they did in the court

of common pleas, in which court the plaintiff, Morris J. Rose, instituted a suit for divorce against Selma E. Rose.

She filed an answer denying the accusations made against her, and in a cross-petition set forth numerous accusations against her husband, and asked that she be granted a divorce. She also alleged that certain children of her husband by a former marriage were necessary parties to the suit, asked that they, other individuals, the M. J. Rose Company, and other corporations, be made defendants, and claimed that, by a certain written instrument made and executed on October 20, 1923, the plaintiff attempted to dispose of certain property, to wit, the shares of stock which he then owned in the concern known as the M. J. Rose Company. By this instrument of writing and certain acts which occurred at the time it was executed he attempted to give to the children named in said instrument, and who signed the same, said shares of stock, but reserved certain rights therein as set forth in said writing.

The defendant children, by proper pleadings, denied the allegations made against them in said cross-petition, and claimed to own said shares of stock as set forth in said writing.

Upon the issues thus made by the petition of the plaintiff and the cross-petition of the defendant Selma E. Rose as to the divorce and alimony, and upon the cross-petition of Selma E. Rose and the pleadings of said children as to the validity of said alleged transfers of stock, the case was submitted to the trial court and heard and decided by it.

The court found upon the issues thus made that the defendant Selma E. Rose was entitled to an ab-

solute divorce from the plaintiff, allowed her certain alimony, attorney fees, and expenses, found that the alleged transfer of the shares of stock of said company was voidable, that the plaintiff did not accomplish the purpose of parting with the absolute title to said shares of stock, and that he was the sole owner thereof.

The trial court further found that all of the personal property which was held in the name of said the M. J. Rose Company and the Economy Furniture Company was in fact the individual property of said plaintiff; that he was merely transacting his personal business under the names of said companies, and that therefore plaintiff was the owner of all of said property which he alleged belonged to said companies.

Proper motions for new trials upon these issues were filed and overruled, and the plaintiff has prosecuted error to this court to reverse the judgment so far as the divorce and alimony are concerned, and the children who are affected by the judgment setting aside the transfer of the stock of said the M. J. Rose Company have appealed that issue to this court, and all of said issues have been submitted together upon oral argument and printed briefs.

We will first consider and pass upon the issues which were appealed to this court.

It may be stated that the weight of authority sustains the proposition that, generally, the husband may make such disposition of his personal property during his lifetime by gift, voluntary conveyance, or otherwise, as he may wish, even though his widow is thereby deprived of the distributive share therein which would otherwise fall to her upon his death.

Having such right, his exercise of it is not, in and of itself, a fraud upon his wife, who has no present interest in the husband's personal property; she not being a *quasi* creditor of his.

But this general rule does not apply where the parties have separated and have assumed extra-marital relations towards each other, for in such cases the wife may be regarded as a *quasi* creditor, and his gifts of personal property may then be in fraud of her right to separate maintenance or to alimony; and, if they are not living as husband and wife, but have not actually separated, and their relations are such as to make separation inevitable or very probable, and the husband, desiring to bring about such result, and in anticipation thereof, makes a voluntary transfer of all or the greater portion of his personal property to others, for the very purpose of depriving the wife of separate maintenance or alimony and avoiding his marital obligations in reference thereto, the rights of the parties may well be considered to be the same as if they had actually separated and assumed extramarital relations towards each other, for, when said general rule was first announced, any right which the widow had to a distributive share of her deceased husband's personal property could be taken away by his will; but now, by statute, such right cannot be taken from the widow without her consent, and hence it is not inequitable to hold that the wife has an interest in her husband's personal property during his lifetime which may be protected against the fraud of the husband where the rights of innocent third parties are not involved.

Where the parties are living together amicably,

and under said general rule the wife is not considered a *quasi* creditor, if the husband voluntarily transfers his personal property to others, and the transaction is colorable—that is, presents an appearance which does not correspond with the reality and is a mere device or contrivance by which the husband, retaining to himself the use and benefit of the property during his life, and not parting with the absolute dominion over it, seeks at his death to deprive his widow of her distributive share—the widow may have the transfer set aside on the ground that there was no completed gift; there being a gift in form, but not in fact, and such transaction lacking the essential element of a gift, that is, intention. *Brown* v. *Crafts,* 98 Me., 40, 56 A., 213.

To constitute a gift there must be a delivery with the intention to then unconditionally part with ownership; and a delivery, however formal, without such intention, is not sufficient to constitute a valid gift. If there is a writing at the time of delivery, which on its face purports to be a gift, that is not conclusive, as evidence may be offered to show the true intention.

In the case at bar, the transaction in question was not the result of any negotiations between Rose and his children, in the sense of making a contract. On the part of Rose, it was purely gratuitous, and the children merely signed the papers he presented to them, and hence the question of whether he really intended to make a gift depends entirely upon the acts and conduct of Rose; so what he did before, at the time, and since said time, may be considered in determining what his intention was, and, of course, the circumstances under which he acted, such as his

domestic relations, his tax problems, etc., should be considered, and likewise what he said then and what he now says in reference to the transaction, and also the conduct of the children in reference to said transaction, and what they said then and thereafter.

After a consideration of the evidence bearing on the question, we have reached the conclusion that, even if there was a delivery in fact of said stock, Rose did not, on October 20, 1923, deliver said stock to his children with the intention of then unconditionally parting with the ownership thereof, or of any part thereof, or any interest therein; that the transaction was a mere scheme or contrivance, the object of Rose being to make it appear that gifts were made when none was actually intended, his purpose being to avoid his obligations to his wife in the event of a separation, which he then anticipated; and in the other transactions, where Rose caused stock in said corporations to be issued in the names of his children, he did not do so intending thereby to make gifts to them.

Upon the issues made as to the divorce and alimony, attorney fees, expenses, etc., it was substantially stated in open court that the plaintiff does not seriously claim that there were any errors in the proceedings which were prejudicial to him in the granting of the divorce, but that the amount allowed for alimony is excessive.

From our investigation of the record, however, we find that the court was justified in granting the defendant Selma E. Rose a divorce from said plaintiff, and we cannot say that the amounts allowed for her alimony, attorney fees, etc., are manifestly against the weight of the evidence.

Upon the issues made as to the M. J. Rose Company, we find from our investigation that it is an Ohio corporation; that it was duly organized according to law; that it has been doing business as such; and that the interests therein were represented by the shares of stock issued by its officers from time to time.

The trial court further found, however, that, by reason of the way in which the officers of said the M. J. Rose Company and the Economy Furniture Company and the plaintiff conducted the business of said companies, the plaintiff as an individual was really doing business under the names of said corporations, and that, while said business was conducted and property was bought and sold in the names of said corporations, it really was all done by the plaintiff as an individual, and that the said the M. J. Rose Company and the Economy Furniture Company were merely vehicles of said plaintiff for said purpose.

The record shows that the alleged officers of said corporations' were dominated entirely by the said plaintiff, without objection by said children or any of them, both before and after October 20, 1923; that for years at a time meetings were not held by either the stockholders or directors of said companies; that, when circumstances seemed to require, minutes would be written up of meetings which never occurred; that the shares of stock would be issued and reissued without let or hindrance upon the suggestion of the said M. J. Rose, and by him alone, and that he individually exercised full and complete control of the business, the same as if there were no corporations, and there is other evi-

dence in the record along the same line—so, taking the record upon this subject as a whole, we are not able to say that the trial court was manifestly wrong in holding that said M. J. Rose as an individual was doing business under the names of said corporations, and that the property which seemed to belong to them in fact belonged to him. Such finding involves only the right of the parties to this suit, and is, of course, without prejudice to the rights of parties having *bona fide* dealings with such corporations as such.

A decree may be drawn in the equity case finding that Morris J. Rose is the owner of all the capital stock of said corporations and that the said children are not the owners of any of said stock. In the error case, the judgment is affirmed; and both cases are remanded to the court of common pleas for execution.

*Decree and judgment accordingly.*

FUNK, P. J., PARDEE and WASHBURN, JJ., concur.