MACLEAN, Plaintiff, v. J. S. MACLEAN COMPANY et, Defendants.

Probate Court, Franklin County.

No. 155750. Decided January 26, 1955.

James M. Hengst, Columbus, for plaintiff.
Harrison W. Smith, Columbus, for defendants.

**OPINION**

By McCLELLAND, PJ.

**DECISION ON PETITION FOR DECLARATORY JUDGMENT**

This matter comes before the court on a petition filed herein by Jane S. MacLean for declaratory judgment on certain matters set forth in the petition. She alleges that she is the surviving spouse of John S. MacLean, deceased, who died on November 20, 1952, intestate, leaving, in addition to the plaintiff, a daughter by the plaintiff, three children by a former marriage, and grandchildren of said decedent who are the children of a deceased son of said decedent by said former marriage.

She alleges that she and the decedent were married on April 1, 1922, and that Julie MacLean Nisonger is the only issue of said marriage; that the other defendants are the three children of said decedent by said former marriage, the children of a deceased son of said decedent by said former marriage, and the wife of said deceased son.

She further alleges that about August 30, 1940, decedent notified the plaintiff, in writing, that he had then and there left their home and abandoned her with intent to live separate and apart, and that they did continuously reside separate and apart until his death.

She further alleges that on September 15, 1953, she was appointed and

qualified as administratrix of his estate; that on December 2, 1953, she filed in the Probate Court an inventory and appraisement disclosing that the assets of the estate of said decedent amounted to $44,474.64, and that the inventory failed to disclose any stock of The J. S. MacLean Company as assets of the estate. She further alleges that she is entitled to one-third of his estate in addition to the sum of $2500.00 exempt from administration and $3000.00 allowed by the appraisers of said estate for her support for one year.

She further alleges that on or after October 9, 1953, it came to her knowledge that on December 31, 1950, decedent without an adequate and full consideration in money or money's worth, transferred by gift five hundred and twelve (512) shares of common capital stock of the defendant, The J S. MacLean Company, which shares then and there constituted the controlling interest in said corporation, to the defendants, Margaret M. Stratton, Flora M. Reeder, John Norman MacLean, and Eleanor H. MacLean, one hundred and twenty-eight (128) shares being given to each, all of the shares so transferred being then of the reasonable market value of $115,200.00, said gift being made upon the condition that John Norman MacLean and Eleanor H. MacLean forthwith purchase, at their appraised value, the shares then and there given to Margaret M. Stratton and Flora M. Reeder. She further alleges that she is informed and therefore avers that John Norman MacLean and Eleanor H. MacLean are now the owners of said five hundred and twelve (512) shares.

The plaintiff further alleges that the gift is testamentary in character, that it was made in contemplation of death and was made with intent to deprive plaintiff of her distributive share in the estate of said decedent as provided by the statutes of descent and distribution.

Plaintiff further alleges that after deducting debts, estate taxes and costs of administration, the interest of plaintiff as surviving spouse in the estate of said decedent as set forth in the inventory and appraisement filed herein will be approximately $11,000.00, and that had the aforesaid shares of stock of The J. S. MacLean Company been retained by the decedent, at his death decedent's estate would have been in excess of $180,000.00 and plaintiff's share therein under the statutes of descent and distribution would have amounted to at least $60,000.00.

Plaintiff further alleges that the decedent made no provision for her in lieu of or to compensate her for the amount from which she was deprived by reason of the aforesaid alleged gift, and had not said alleged gift been made, the share of their daughter, Julie MacLean Nisonger would have been about $25,000.00 instead of about $6,000.00. No provision for the daughter was otherwise made.

Plaintiff further avers that the alleged gift was fraudulent and void as to the rights of the plaintiff to a distributive share therein and that said shares of stock were, and are, in fact, assets of said estate; that plaintiff is entitled to a distributive share therein, and that the value thereof should be considered in computing the amount due plaintiff as surviving spouse under the statutes of descent and distribution; that said alleged gift of December 31, 1950, was of no force and effect when executed and was in fact testamentary in character and made in contemplation of death, and a mere device and subterfuge by which the decedent attempted to

deprive the plaintiff of a right to a distributive share of said stock and that the same is null and void and of no force and effect.

To this petition a joint answer was filed by The J. S. MacLean Company, Margaret M. Stratton, Flora M. Reeder, John Norman MacLean, and Eleanor H. MacLean, in which the truth of some of the allegations of the petition was admitted and in which others were denied.

When this matter came on for hearing counsel for the parties deposited with the court a stipulation which the court might consider as an agreed statement of facts upon which its decision should be rendered. In addition thereto, the deposition of Elizabeth Neff Fry, a daughter of the plaintiff by a former marriage, was offered and received. The testimony of this witness was confined largely to the notice of leaving the home and the contents of a certain letter, to which reference will hereinafter be made.

The testimony of Jane Neff Trucksie was also taken at the time of the hearing and to which reference will hereinafter be made.

At the hearing of this matter a certain document, marked plaintiff's exhibit "1" was admitted as evidence in addition to the stipulation of facts hereinbefore referred to. We will note' the essential elements of that exhibit. It recites that John A. MacLean has for many years been engaged in the manufacture of builders' millwork, store and office fixtures, and that he has recently organized a corporation known as The J. S. MacLean Company, with a capital stock of $100,000.00, and is about to transfer the assets of his business to the corporation and receive therefore one thousand .(1000) shares of the capital stock of said corporation of the par value of $100.00 each, fully paid up. The contract recites that whereas certain differences and questions have arisen among the parties hereto. namely, John S. MacLean, J. H. MacLean, Archie A. MacLean, Flora MacLean Reeder and Margaret MacLean Stratton, largely by reason of the marriage of said John S. MacLean, and whereas John S. MacLean desires to make provision during his lifetime for his four children above named, the other parties thereto. The agreement was executed on the 6th day of January, 1923, and recites that John S. MacLean will transfer and assign or cause to be issued to said J. H. MacLean. Archie A. McLean, Flora MacLean Reeder and Margaret MacLean Stratton, each, one hundred and twenty-two (122) shares of the capital stock of The J. S MacLean Company. The remainder of the stock, to-wit, five hundred and twelve (512) shares to be issued to John S. MacLean. The third paragraph of said contract consists of the following language:

"Upon the death of said John A. MacLean or upon his complete and permanent retirement and withdrawal from the business and affairs of said corporation, his said stock shall thereupon become the absolute property of said J. N. MacLean and Archie A. MacLean, share and share alike. The said J. N. MacLean and said Archie A. MacLean shall pay to said Flora MacLean Reeder and Margaret MacLean Stratton each a sum equal to the value of one-fourth of the stock so received by them as shown by the book value, and the same shall be payable one-third cash, one-third in one year and one-third in two years, with interest payable annually, and the amount of the deferred payments shall constitute a lien against one-half of the stock so received, that is, one-fourth thereof in favor of Flora MacLean Reeder and one-fourth thereof in favor of Margaret MacLean

Stratton. It is clearly and distinctly understood and agreed, however, that the time of the retirement and withdrawal of said John S. MacLean shall be determined by him, and, until he shall have given notice to the Board of Directors of said corporation, in writing, of his retirement and withdrawal. by letter addressed to said corporation at its then place of business, he shall be held and considered as being still connected with the management and business of said corporation." ·

The fourth paragraph of said contract consists of the following language:

"It is further understood and agreed by and among the parties hereto and each of them, that the stock presently to be assigned or issued to them and the stock to become the property of J. N. MacLean and Archie A. MacLean and the payments to be made to Flora MacLean Reeder and Margaret MacLean Stratton, upon the withdrawal and retirement, as aforesaid, or death of said John S. MacLean, shall be held to be an advancement to them and each of them out of the estate of said John S. MacLean."

· The fifth paragraph contains conditions and restrictions in regard to the sale or disposition of any shares of stock during the existence of the contract. The same is true as to paragraphs six, seven and eight.

Paragraph nine contains the agreement that in the event that J. N. MacLean or Archie A. MacLean should retire from the Company prior to the death of John S. MacLean, the board of directors or the stockholders might sell the business and assets of the corporation.

Paragraph ten of the agreement provides for the deposit of the stock certificates during the life of the agreement or until John S. MacLean retired from the business.

The foregoing are the essential provisions of the agreement bearing date of January 6, 1923. Subsequent to the death of Archie A. MacLean, a supplemental agreement was made to take care of certain contingencies arising by the death of Archie A. MacLean.

On November 24, 1950, John S. MacLean sent a letter to The J S. MacLean Company and the Board of Directors of The J. S. MacLean Company notifying them that in reference to the contract dated January 6, 1923, he desired that the provisions of the contract be carried out and that said contract be completely executed. He also uses the following language:

"I wish to completely and permanently retire and withdraw from the business and affairs of The J S. MacLean Company, as of the date hereof. and this letter constitutes notice thereof to you. Upon receipt hereof. your appropriate officers are authorized and directed to carry out the provisions of said contracts and to effect the proper transfer of my stock in The J. S. MacLean Company in accordance therewith."

The stipulation contains the following facts: The plaintiff herein and John S. MacLean were married on April 1, 1922. On January 6. 1923. the contract hereinbefore referred to was executed. The four persons with whom Mr. MacLean made his contract of January 6. 1923, were children by a former marriage. It also contains the facts as to the incorporation of the company and the issuing of the shares of stock as hereinbefore stated. John S. MacLean was a member of the board of directors and president of said corporation from the date of incorporation until December 31. 1950. at which time the contract of January 6, 1923, was fully consummated. After the marriage of the plaintiff and John S. MacLean in 1922 they lived

together as husband and wife in Columbus, Ohio. A daughter, Julie Mac-Lean Nisonger, was born of this marriage on January 28, 1923. After 1940 the decedent resided with his daughter, Flora MacLean Reeder. until 1949. He did not live with his wife after the year 1940. Gift tax returns as of December 31. 1950, were executed by John S. MacLean as donor and the four children as donees, by which the sum of $9,897.00 as a gift tax was paid by them. John S. MacLean died on November 20, 1952. aged ninety-four years.

We believe the foregoing are the essential facts upon which the court must render its decision.

Counsel for the plaintiff, in his memorandum filed with this court, gives five different reasons why the court should declare the transaction to be invalid. We will take them up in the order in which they are presented by counsel.

Counsel first says that the 1950 transfer was without consideration. On a careful examination of the contract dated January 6, 1923, this court finds that as between John S. MacLean and his four children the whole transaction resulted in a gift from him to his four children. He first distributed one hundred and twenty-two (122) shares each to his four children and retained five hundred and twelve (512) shares. The contract also provided that at his death or his permanent withdrawal from the company, the remaining five hundred and twelve (512) shares were to be distributed according to the contract. to his two sons but the sons were to pay to their sisters an amount of money equal to one-half of the value of the stock. Therefore, by virtue of the contract each of his four children by his first wife received one-fourth of the entire capital stock of The J. S. MacLean Company. There was no consideration passing from the children of John S. MacLean to him for the transfer of said stock to them. The contract recites that the transfer should constitute an advancement to them. An advancement is gift of a portion of a person's estate to an heir and shall be charged against the distributive share of the heir upon the final settlement of the donor's estate. It does not bear interest and is not recoverable from the donee.

Even though we consider the entire transaction to be a gift to his four children, the gift was subject to certain conditions to be performed by the donees thereof. The fact that conditions were attached does not destroy the qualities of a gift. Almost every gift to charity, either public or private, is subject to conditions put upon it by the donor. Many people make gifts for certain purposes, even private purposes. and attach conditions to the gift although they have given up possession and control of same.

As we have heretofore said, the whole transaction between Mr. Mac-Lean and his children resulted in an equal division of his property among them and did constitute a gift. However. as between them and the donor. they did enter into a contract as to how the property should be handled up until the death of Mr. MacLean or his prior retirement from the Company. When Mr MacLean retired from the company the stock was distributed according to the terms of the contract and he then severed all connection with the company and yielded dominion and control over same and retained no interest, either directly or indirectly, in the shares which had been owned by him.

Counsel for the plaintiff claims that the parties are bound by their own admissions in filing a gift tax return. It is our opinion that they did file a gift tax return and are bound by their own admissions that the transfer of the stock to them was a gift and we so hold; yet, simultaneously therewith, a contract was made between the donor and the donees as to how the shares should be held during the lifetime of Mr. MacLean and how they should be disposed of at his death or when he retired from the company

We will now go to the third branch of the argument of counsel for the plaintiff, in which he claims that the transaction was collusive, testamentary and colorable. In considering this matter, the court has examined the treatise on the subject of gifts found in Vol. 24 of American Jurisprudence, at page 736. At Section 13, on that page, we find the following language:

"It is not always easy to determine whether or not an instrument is testamentary in character. It depends upon the intention of the donor. Where there is not only a donative intention, but also a complete divestment by the donor of all dominion or control over the thing given, the transaction is a gift inter vivos and not testamentary in nature. The fact that the instrument postpones the enjoyment of the subject matter until after the death of the grantor is not decisive that the instrument is testamentary in character. The test is whether the maker intended the instrument to have no effect until after his death or whether he intended it to transfer some present interest. If some interest vests at once in right, although the enjoyment of it is postponed, the instrument is not a will, and it is irrevocable."

The author refers us to a number of court decisions to which attention is directed. In our opinion, the foregoing statement completely answers the contention of counsel for the plaintiff. Had Mr. MacLean's death occurred prior to November 20, 1952, the result would have been such as to render the contract testamentary. However, the contract was fully performed during his lifetime. He surrendered all dominion and control of the property to his children. He retained no interest or no benefits in the corporate stock and therefore the gift became a complete inter vivos gift.

We now come to the second contention of the plaintiff that the transfer was invalid because the wife was a quasi-creditor. This is a most interesting and unusual question. In order to answer this question the court has examined a number of decisions of the Supreme Court of Ohio. the first of which is the case of **Bolles v. The Toledo Trust Co., 144 Oh St 195**, the first syllabus of which reads as follows:

"A husband may dispose of his personal property during his lifetime without the consent of his wife; but a husband may not bar his widow of her right to a distributive share of any property which he owns and of which he retains the right of disposition and control up to the time of his death."

We have also examined the case of **Mark v. Mark, et al., 145 Oh St 301,** the fourth syllabus of which reads as follows:

"Where there is no invasion of a wife's present, existing right to support, the fact that her husband made large inter vivos gifts to his children

by a former marriage will not warrant the granting of a divorce on the ground that in so doing the husband has been guilty of either gross neglect of duty or extreme cruelty."

Syllabus five of said case reads as follows:

"Failure to support, to constitute gross neglect of duty, must exist prior to or at the time the decree for divorce and/or alimony is rendered and may not be predicated upon a possible or probable failure of future support. nor does such possible or probable failure of future support constitute extreme cruelty within the purview of the statutes relating to divorce and alimony."

The above decision is one in an action for divorce and we have referred to this decision for the reason that it reflects the court's concept of the duty of the husband to support his wife.

The seventh syllabus of that case also recites that by the provisions of §7995 and §7997 GC, a husband is not required to provide other than present support for his wife.

Sec. 7997 GC, in force at the time of the transactions under investigation, provides as follows:

"The husband must support himself, his wife, and his minor children out of his property or by his labor. If he is unable to do so, the wife must assist him so far as she is able."

Sec. 7998 GC consists of the following language:

"Neither husband nor wife has any interest in the property of the other, except as mentioned in §3103.03 R. C., the right to dower, and the right to remain in the mansion house after the death of either  Neither can be excluded from the other's dwelling, except upon a decree or order of injunction made by a court of competent jurisdiction."

We have also examined the case of **Neville v. Sawicki, 146 Oh St 539,** syllabus two of which reads as follows:

"The rights which the General Assembly has granted a surviving spouse by the provisions of §§10509-54, 10509-55 and 10509-74 GC, are expectant interests only. dependent upon the contingency that the property. to which such rights attach, becomes a part of the decedent's estate. which contingency does not occur if decedent has sold or given away the property during his lifetime."

We must make this observation that the transfer of property during the lifetime of the decedent is attacked, not the right of the wife to present support. The inventory in this estate shows that Mr. MacLean left an estate of more than $44,000.00, and it is especially significant that neither the petition of the plaintiff, the stipulation of facts, nor the testimony. discloses any failure on the part of Mr. MacLean to provide present support for his wife. The record is entirely silent as to any divorce action having ever been filed against Mr. MacLean by the plaintiff, or any complaint having been lodged against him for failing to support. nor is there any evidence that he divested himself completely of assets so that he could not support his wife and minor child.

We again allude to syllabus seven of the case of Mark v. Mark, et al., hereinbefore referred to, in which Judge Turner says:

"The provisions of §7995 and §7997 GC, do not require a husband to provide other than present support for his wife."

Our attention has also been called to the case of **Rose v. Rose, et al.,** **34 Oh Ap 89,** the first syllabus of which reads as follows:

"Where a husband and wife occupy extra-martial relations towards each other gifts of personal property by the husband may be a fraud upon the wife's right to separate maintenance or to alimony."

Then, on page 91 of the same report, we find the following language:

"It may be stated that the weight of authority sustains the proposition that, generally, the husband may make such disposition of his personal property during his lifetime by gift, voluntary conveyance, or otherwise, as he may wish, even though his widow is thereby deprived of the distributive share therein which would otherwise fall to her upon his death. Having such right, his exercise of it is not, in and of itself, a fraud upon his wife, who has no present interest in the husband's personal property; she not being a quasi creditor of his.

"But this general rule does not apply where the parties have separated and have assumed extra-martial relations towards each other, for in such cases the wife may be regarded as a quasi creditor, and his gifts of personal property may then be in fraud of her right to separate maintenance or to alimony; * * *"

In examining the decisions cited by counsel for the plaintiff we find that most of those cases arise out of different facts than those which are now before this court. Most of those cases arise out of allegations that a spouse is attempting to fraudulently deprive a wife of the support to which she is entitled under and by virtue of the two sections hereinbefore referred to. Should those conditions exist, then a wife is a quasi-creditor; but there are no circumstances in the case now before us which would justify this court in holding that the plaintiff is a quasi-creditor of the decedent.

Counsel for the plaintiff has directed our attention to the case of **Ward v. Ward, 63 Oh St 125.** This case more nearly sustains the claim of the plaintiff than any other case which he has cited. This case was decided in 1900, the opinion being written by Judge Minshall. We also note a dissenting opinion written by Judge Spear, and this court is of the opinion that the dissenting opinion is much more logical than the original opinion. However, since that opinion has been rendered, the Supreme Court has spoken at three different times, to which reference has heretofore been made. If the Ward case above referred to has not been explicitly overruled, it certainly has been inferentially overruled by the Supreme Court in the cases to which we have alluded. Mr. MacLean, in the transaction which is the subject of this litigation, may not have been guided by the highest code of ethics, but, in our opinion, the transaction was perfectly legal and did not constitute a fraud upon his wife. We have heretofore noted that neither the pleadings nor the stipulation of fact contain any allegation or information that he did deplete his estate as to render him unable to provide maintenance and support for his wife.

As we have said at the beginning of this decision, the questions presented are interesting and most unusual and it is the first time that this court has been called upon to consider such a situation and after giving it full and careful consideration, the court is compelled to deny the prayer of the petitioner and an order may be drawn accordingly.