DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Ahrea Carleen Click, appeals the Lawrence County Court of Common Pleas' grant of summary judgment to Appellees, John William Click and Nancy Lynn Jarrell Click,[2] on her complaint for conspiracy to commit fraud. Appellant contends that she has presented sufficient circumstantial evidence of a conspiracy to demonstrate the existence of a genuine issue of material fact with regard to Appellees' involvement in a conspiracy with their father, John Edgar Click, to deprive her of marital assets. Because we find that Appellees met their burden of proving that no genuine issue of material fact exists, we hold that they are entitled to judgment as a matter of law. Accordingly, we affirm the judgment of the trial court.
 I. Facts {¶ 2} Appellant married John Edgar Click on February 12, 1972. When they married, both John Edgar and Appellant had adult children from previous marriages. John William and Nancy are John Edgar's children from his previous marriage.
 {¶ 3} On July 22, 2003, Appellant filed a complaint for divorce against John Edgar in the Lawrence County Court of Common Pleas. She also named Huntington Federal Savings Bank and United Bank, both located in *Page 3 
West Virginia, as parties to the divorce. Appellant alleged that John Edgar held accounts and/or a safe deposit box with those banks that might contain marital assets. The next day, Appellant filed an amended complaint adding Appellees as additional parties and alleging that they might be joint account holders or joint signees on a safe deposit box with John Edgar. On that day, the court issued a temporary order prohibiting John Edgar from accessing any safe deposit box held in his name or held jointly with John William, and prohibiting him from making any withdrawals from any accounts in which he had an ownership interest.
 {¶ 4} A review of the record indicates that Appellant's process server personally served "John Click," Huntington Federal Savings Bank, and United Savings Bank with process on July 23, 2003. John Edgar filed his answer and counterclaim on July 24, 2003. John William received service of process by certified mail on July 30, 2003. The post office returned Nancy's certified mail service unclaimed on August 15, 2003. The record reflects that the clerk sent her service of process via regular mail on September 9, 2003. Despite their receipt of service of process, the record does not reflect that Huntington Federal Savings Bank, United Bank, John William or Nancy ever filed answers or otherwise appeared in the divorce proceedings. *Page 4 
 {¶ 5} The magistrate made temporary orders regarding spousal support and the division of certain funds. Pursuant to a court order, the parties opened and inventoried John Edgar Click's safe deposit box, located at City National Bank, Third Avenue, Huntington, West Virginia on December 19, 2003. The trial court scheduled the divorce for trial and continued the matter several times. However, the trial never occurred because John Edgar died on March 8, 2005.
 {¶ 6} After John Edgar Click's death, Appellant filed a second amended complaint informing the court of his death and naming "The Unknown Executor or Administrator of the Estate of John Edgar Click," John William and Nancy, Appellees herein, and City National Bank as defendants. In her second amended complaint, Appellant alleged that John William and Nancy, Appellees herein, conspired with John Edgar to convert marital assets for his own use, fraudulently depriving her of her rightful portion of those marital assets. She alleged that John Edgar used marital assets to purchase joint and survivorship certificates of deposit and United States savings bonds for the benefit of himself and his children. Appellant contends that the bonds and certificates of deposit have a value of approximately one million dollars. *Page 5 
 {¶ 7} In her prayer for relief, Appellant requested that the trial court 1) extinguish Appellees' interest and vest ownership of the disputed securities solely in her name; 2) order City National Bank to prohibit access to the safe deposit box pending further orders from the court; 3) prohibit the executor or administrator of John Edgar's estate from distributing, selling, transferring or otherwise disposing of any alleged estate assets without court approval; and 4) grant any other relief the court deemed appropriate.
 {¶ 8} Simultaneous with the filing of her second amended complaint, Appellant filed a motion requesting a temporary restraining order to prevent Appellees and the unknown executor or administrator of John Edgar Click's estate from accessing or disposing of the disputed assets. The court granted the motion, and issued a temporary order prohibiting Appellees and/or the unknown executor from taking possession of, cashing, transferring, or otherwise disposing of any securities or other assets held in the name of John Edgar Click, or jointly with John Edgar Click. The court further ordered City National Bank to prohibit those individuals from accessing the safe deposit box, or withdrawing any funds from any accounts held in John Edgar's name either individually or jointly with John William and/or Nancy. The court later supplemented its judgment entry to order City National Bank to prohibit both Appellant and the administrator of the estate from accessing *Page 6 
any safe deposit box, certificates of deposit, bonds or other securities or withdrawing any funds from accounts held in John Edgar Click's name either individually or jointly with his children. Additionally, the court issued an order of injunction against City National Bank incorporating the prohibitions enumerated in the court's temporary order.
 {¶ 9} On March 11, 2005, counsel for John Edgar Click moved the court to dismiss the case on the ground that John Edgar Click died. Instead of dismissing the action, the trial court transferred it to the civil docket from the domestic docket and assigned it a new case number — 030C583A. City National Bank filed an answer, admitting that it rented a safe deposit box to John Edgar Click, but generally stating that it lacked knowledge or belief to answer the remaining allegation of the complaint. Additionally, City National asserted that: 1) the complaint failed to state a claim upon which relief could be granted; and 2) the court should dismiss the complaint as it related to City National because it lacked both personal and subject matter jurisdiction because the safe deposit box is in West Virginia.
 {¶ 10} Appellees filed their answer on May 2, 2005, Then, on August 26, 2005, they filed a motion for summary judgment, alleging that no genuine issues of material fact existed, and, therefore, they were entitled to judgment as a matter of law. Specifically, they asserted that no factual basis *Page 7 
existed for the allegations of fraud contained in Appellant's complaint. They claimed that because Appellant could produce no evidence of any underlying unlawful act to support her conspiracy allegations, they were entitled to judgment as a matter of law.
 {¶ 11} After hearing argument from the parties, the trial court reviewed the pleadings, memorandums, affidavits and deposition transcript, as well as the applicable law. The court found that one spouse may place marital assets in accounts without including the other spouse's name, that it happens all of the time, and that there is not civil cause of action to address such conduct. Because the court concluded that John Edgar Click's conduct was lawful, the court agreed with Appellee's assertion that no underlying unlawful act (i.e. no fraud) existed to support Appellant's conspiracy allegations. Additionally, the court found no evidence that the children knew what was occurring, participated in a conspiracy, or planned the activities. Finding no factual basis to establish Appellant's allegations of fraud or conspiracy, the trial court granted summary judgment to Appellees and dismissed the entire action.
 {¶ 12} Appellant now appeals, setting forth a single assignment of error for our review. *Page 8 
 II. Assignment of Error {¶ 13} "I. THE TRIAL COURT ERRED IN GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT WHEN, BASED UPON THE EVIDENCE, REASONABLE MINDS COULD CONCLUDE THAT THE ALLEGATIONS CONTAINED IN THE PLAINTIFF-APPELLANT'S COMPLAINT WERE TRUE."
 III. Legal Analysis {¶ 14} A court may properly grant summary judgment when it finds that, based upon the entire record: 1) there is no genuine issue as to any material fact; 2) there moving party is entitled to judgment as a matter of law; and 3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his or her favor. Civ.R. 56; See Bostw v. Conner (1988), 37 Ohio St.3d 144, 146, 524 NE.2d 881;Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66,375 NE.2d 46; Morehead v. Conley (1991), 75 Ohio App.3d 409, 411,599 NE.2d 786.
 {¶ 15} The movant bears the initial burden of demonstrating that no genuine issue of material fact exists. Dresher v. Burt (1996),75 Ohio St.3d 280, 294, 1996-Ohio-107, 662 NE.2d 264; citing Mitseff v.Wheeler (1988), 38 Ohio St.3d 112, 115, 526 NE.2d 798. The movant bears this burden *Page 9 
even for issues for which the nonmoving party may bear the burden of proof at trial. Id. "However, once the movant has supported his motion with appropriate evidentiary materials, the nonmoving party may not rely upon the allegations and/or denials in his pleadings. * * * He must present evidentiary materials showing that a material issue of fact does exist." Morehead at 413. Civ.R. 56(C) specifically provides that a trial court shall only consider "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact * * *."
 {¶ 16} An appellate court reviews a trial court's decision regarding a motion for summary judgment de novo. See, e.g. Doe v. Shaffer (2000),90 Ohio St.3d 388, 390, 2000-Ohio-186, 738 N.E.2d 1243; Grafton v. OhioEdison Co. (1996), 77 Ohio St.3d 102, 105, 1996-Ohio-336,671 N.E.2d 241. Thus, in determining whether a trial court properly granted a motion for summary judgment, an appellate court must review the standard for granting a motion for summary as set forth in Civ.R. 56, as well as the applicable law. An appellate court must independently review the record to determine if summary judgment was appropriate and need not defer to the trial court's decision. See Brown v. Scioto Bd. ofCommrs. (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153;Morehead at 411-412. *Page 10 
 {¶ 17} In her sole assignment of error, Appellant contends that the trial court erred in granting summary judgment to Appellees. Specifically, Appellant contends that the trial court erred in granting summary judgment on the ground that there was no underlying unlawful act to support her conspiracy claim. Appellant asserts that John Edgar Click's fraud upon her is the underlying unlawful act supporting her conspiracy claim. She argues that her deposition testimony and affidavit about his conduct in systematically using marital assets to purchase joint and survivorship bonds and certificates of deposit, in his name and the names of his children, without her knowledge or consent, creates a genuine issue of material fact as to the existence of the underlying unlawful act.
 {¶ 18} Appellant further contends that the record contains sufficient circumstantial evidence that, when construed in a light most favorable to her, would permit a reasonable trier of fact to conclude that Appellees conspired with John Edgar to perpetrate this fraud upon. She argues that Appellees' self-serving affidavits in support of their motion for summary judgment are insufficient to demonstrate that no genuine issue of material fact exists because they are no substitute for testimony under oath at trial.
 {¶ 19} A civil conspiracy is "a malicious combination of two or more persons to injure another person or property, in a way not competent for one *Page 11 
alone, resulting in actual damages." Kenty v. Transamenca Premium Ins.Co. (1995), 72 Ohio St.3d 415, 419, 1995-Ohio-61, 650 N.E.2d 863; quoting LeFort v. Century 21-Maitland Realty Co. (1987),32 Ohio St.3d 121, 126, 512 N.E.2d 640; citing Minarik v. Nagy (1963),8 Ohio App.2d 194, 196, 193 N.E.2d 280. Ohio law does not recognize civil conspiracy as an independent cause of action. Minarik at 195. Instead, a plaintiff must demonstrate the existence of an underlying unlawful act to prevail upon a civil conspiracy claim. Id.
 {¶ 20} The element of a "malicious combination to injure" does not necessarily require a plaintiff "to prove an express agreement among the parties, or that the parties met at any time and entered into any explicit or formal agreement, either written or oral." Pumphrey v.Quillen (1955), 102 Ohio App. 173, 177-178, 141 N.E.2d 675, affirmed (1956), 165 Ohio St. 343, 135 N.E.2d 328. Instead, it is generally sufficient that "the parties in any manner come to a mutual understanding that they will accomplish the unlawful design." Id. Moreover, a tacit understanding of design will suffice. Gosden v.Louis (1996), 116 Ohio App.3d 195, 219, 687 N.E.2d 481.
 {¶ 21} "The `malice' in `malicious combination' is legal or implied malice, `which the law infers from or imputes to certain acts,' and is defined *Page 12 
as `that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another.' See Pickle v. Swinehart (1960), 170 Ohio St. 441, 443,166 N.E.2d 227 (defining "malice" for purposes of "malicious prosecution"). This `malice,' then, would be inferred from or imputed to a common design by two or more persons to cause harm to another by means of an underlying tort, and need not be proven separately or expressly."Gosden at 219-220.
 {¶ 22} While a plaintiff must demonstrate the existence of an underlying act, and the existence of a malicious combination, she need not demonstrate that each participant in the conspiracy directly committed the unlawful act. Instead, the acts of coconspirators are attributable to each other. Williams v. Aetna Finance Co. (1988),83 Ohio St.3d 464, 476, 1998-Ohio-294, 700 N.E.2d 859; citing Prosser 
Keeton on Torts (5 Ed. 1984), 323, Section 46. "All those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt the wrongdoer's act done for their benefit, are equally liable."Prosser at 323, Section 46. "All parties to a conspiracy are jointly and severally liable for damages occasioned by the wrongful combination; and one who comes into the conspiracy after its organization becomes liable for *Page 13 
all that has been previously done by the parties thereto; and acts done by any one of the conspirators in furtherance of the common object becomes the acts of all." Mulholland v. Waiters' Local Union No. 106(1902), 13 Ohio Dec. 342, 1902 WL 1025. (Citation omitted.)
 {¶ 23} Here, Appellant alleges that the unlawful act underlying her claim for civil conspiracy is fraud. In order to prevail upon a cause of action for fraud, a plaintiff must show: 1) a representation or, where there is a duty to disclose, concealment of a material fact; 2) knowingly made or concealed; 3) with intent of misleading another into relying upon it; 4) justified reliance upon the misrepresentation or concealment; and 5) injury proximately caused by the reliance.Gaines v. Preterm-Cleveland, Inc. (1987), 33 Ohio St.3d 54, 55,514 N.E.2d 709.
 {¶ 24} In their motion for summary judgment, supporting affidavits, and brief on appeal, Appellees deny the existence of fraud. They contend that 1) no factual basis exists for Appellant's allegations of fraud because individuals may legally open joint and survivorship accounts with their children; 2) Appellant's depositions reveals that she has no evidence that they committed a fraud upon her or participated in a conspiracy to defraud her; and 3) their affidavits demonstrate that they had no knowledge, input or involvement in John Edgar Click's investments, making it impossible for *Page 14 
them to commit fraud or conspire to commit fraud with regard to those investments. Based upon their contention that no fraud occurred, Appellees assert that they are entitled to judgment as a matter of law because no underlying unlawful act exists to support Appellant's cause of action for conspiracy.
 {¶ 25} In her complaint, Appellant asserts that, during the course of their marriage, John Edgar Click conspired with Appellees to convert certain marital assets to his own use by using those marital assets to purchase joint and survivorship bonds and certificates of deposit for the benefit of himself and his children. At the summary judgment hearing, Appellees asserted that the only recourse an individual has for the financial misdeeds of his or her spouse during the marriage is a divorce action. The trial court agreed with Appellees, concluding that no cause of action exists to permit one spouse to sue the other for alleged financial misdeeds that occurred during the marriage.
 {¶ 26} Appellant essentially claims in her brief that because she would have been awarded a distributive share as a result of John Edgar Click's financial misconduct had she been granted a divorce, that she should now have a compensable claim for civil conspiracy, essentially against her husband's estate, as well as against his children, individually. This reasoning *Page 15 
is strained. Appellant essentially asks this court to equate financial misconduct, in the context of a divorce action, to fraud, in order to serve as the "underlying unlawful conduct" to support her civil conpiracy claim. However, we cannot conclude that Appellant's actions, though they may have risen to the level of financial misconduct in a divorce action, satisfy the elements of fraud in a civil context.
 {¶ 27} In Jacobs v. Jacobs, this Court considered a claim of financial misconduct in a divorce setting. Jacobs v. Jacobs, Scioto App. No. 02CA2846, 2003-Ohio-3466. In Jacobs, we reasoned that "[t]he financial misconduct statute should apply only if the spouse engaged in some type of `wrongdoing.' [Rinehart v. Rinehart (May 18, 1998), Gallia App. No. 96CA10, 1998 WL 282622; Hammond v. Brown (Sep. 14, 1995), Cuyahoga App. No. 67268, 1995 WL 546903.] There must be a clear showing that the offending spouse either profited from the alleged misconduct or intentionally defeated the other spouse's distribution of assets. [Wideman v. Wideman, Wood App. No. WD-02-30, 2003-Ohio-1858, ¶ 34;Detlaf v. Detlaf (Dec.14, 2001), Lucas App. No. L-00-1137, 2001 WL 1137.]"
 {¶ 28} In Jacobs, we also noted that the burden of proving financial misconduct for purposes of R.C. 3105.171(E)(3) is on the complaining spouse. Jacobs, supra; (Citations omitted). R.C. 3105.171(E)(3) provides *Page 16 
that "[i]f a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." Further, the Ninth District Court of Appeals, in Bucalo v. Bucalo, Medina App. No. 05CA0011-M, 2005-Ohio-6319, found that "financial misconduct requires a wrongdoing that interferes with a spouse'sproperty rights and results in profit to the wrongdoer from the alleged misconduct or stems from an intentional act meant to defeat the otherspouse's distribution of assets." Citing Jacobs, supra; Mikhail v.Mikhail, 6th Dist. No. L-03-1195, 2005-Ohio-322; Eggeman v.Eggeman, 3rd. Dist. No. 2-04-06, 2004-Ohio-6050. (Emphasis added).
 {¶ 29} We do not dispute that Appellant may have had a valid claim in her originally filed divorce action for a distributive award in light of Appellant's apparent financial misconduct. However, that conduct does not necessarily rise to the level of fraud for purposes of supporting a claim of civil conspiracy.
 {¶ 30} In Estate of Kusar (1965), 5 Ohio Misc. 23, 211 NE.2d 535, after reviewing all of the leading cases dealing with personal property, the court reasoned that "the present law of Ohio permits a husband, even during *Page 17 
his marriage, to make a disposition of his personal property during his lifetime by gift as he may wish, even though his widow is thereby deprived of her distributive share therein." In reaching this conclusion, the Kusar court relied on MacLean v. MacLean (1955), 123 N.E.2d 761, 70 Ohio Law Abs. 102, which noted that
"It may be stated that the weight of authority sustains the proposition that, generally the husband may make such disposition of his personal property during his lifetime by gift, voluntary conveyance, or otherwise, as he may wish, even though his widow is thereby deprived of the distributive share therein which would otherwise fall to her upon his death. Having such right, his exercise of it is not, in and of itself, a fraud upon his wife, who has no present interest in the husband's personal property; she not being a quasi creditor of his."[3] Citing Rose v. Rose (1929), 34 Ohio App. 89, 91,170 N.E.2d 181.
 {¶ 31} The MacLean court based its reasoning, in part, on the following language from Vol. 24 American Jurisprudence, p. 736, Section 13, which provides as follows:
"It is not always easy to determine whether or not an instrument is testamentary in character. It depends upon the intention of the donor. Where there is not only a donative intention, but also a complete divestment by the donor of all dominion and control over the thing given, the transaction is a gift intervivos and not testamentary in nature. The fact that the instrument postpones the enjoyment of the subject matter until after the death of the grantor is not decisive that the instrument is testamentary in character. The test is whether the maker intended the instrument to have no effect until after his death or whether he intended it to transfer some present interest. If some interest vests at once in right, although the enjoyment of it is postponed, the instrument is not a will, and it is irrevocable." *Page 18 
 {¶ 32} In determining the ownership of two stock certificates, the Sixth District Court of Appeals has noted that:
"It is undoubtedly true, in a legal sense, that a wife has no interest in her husband's personal property during his lifetime, and that he may dispose of it absolutely during his life by sale or gift, and that this does not constitute a legal fraud on her marital rights, unless she occupies the position of a quasi creditor, as where she is seeking to obtain alimony, but this rule only applies to absolute transfers made to take effect during the husband's life. The limitations of the rule are well stated in 3 Corpis Juris, 524, as follows: `It does not apply where the transfer is a mere device by which the husband, not parting with the absolute dominion over the property during his life, seeks at his death to deprive his widow of her distributive share in his personal property, or where the transfer is made cause mortis to defraud the widow of her dower or distributive share in the personalty.'" Hayes v. Lindquist
(1926), 22 Ohio App. 58, 153 N.E. 269.
 {¶ 33} Thus, in light of the foregoing reasoning, we believe that the key issues in the present case involve determinations of what interest in his personal property John Edgar was attempting to convey to his children and whether or not that interest may now be set aside after his death. R.C. 1109.07 "Deposits in the name of two or more persons; deposits payable on death" provides, in pertinent part, as follows:
"A bank may enter into written contract with a natural person for the proceeds of the person's deposits to be payable on the death of that person to another person or to any entity or organization in accordance with the terms, restrictions, and limitations set forth in sections2131.10 and 2131.11 of the Revised Code."
 {¶ 34} In Estate of Voegeli (1959), 108 Ohio App. 371, 161 N.E.2d 778, the court recognized that "[t]he status of a codepositor of a joint *Page 19 
account, with right of survivorship, is unquestionably established in Ohio." (Citations omitted). The court further stated that "[i]t has been specifically held that the ownership of the funds in a joint and survivorship account, upon the death of one of the parties, passes to the survivor by virtue of the contract." Id.; citing In re Estate ofHutchinson(1929), 120 Ohio St. 542, 166 N.E. 687. The Voegeli court reasoned that
"delivery, which must accompany an ordinary gift such as is present in the so-called passbook cases, is rendered unnecessary because the execution of the joint account deposit contract between the depositor and the supplies the essentials of a completed gift." Estate ofVoegeli, supra; citing In re Estate of Copeland (1943),74 Ohio App. 164, 58 N.E.2d 64.
 {¶ 35} Further, the Court reasoned, at paragraph eight of the syllabus, that
"[notwithstanding the evidence may tend to show a retention of complete control of a joint and survivorship account by the person making such deposit during his life, such evidence does not contradict or overcome the clear and unambiguous intention of such depositor expressed in his contract of deposit to create a vested survivorship interest in praesenti in the codepositor which will inure and pass to the survivor upon death of such depositor."
 {¶ 36} Appellant's testimony reveals that, throughout their marriage, John Edgar took money from their joint checking account and used it to purchase joint and survivorship bonds and certificates of deposit for the benefit of his children without her knowledge or consent. Although Appellant was aware that he removed money from the joint checking *Page 20 
account, she knew that he was not spending the money and believed that her husband was investing it for their joint benefit.
 {¶ 37} In their motion for summary judgment, Appellees contend that John Edgar Click did not commit a fraud upon Appellant because individuals may legally open joint and survivorship accounts with their children. Because the act of opening the accounts is not unlawful, they assert that Appellant cannot prove that a conspiracy exists. Additionally, they contend that pursuant to the Supreme Court of Ohio's holding in Wright v. Bloom (1994), 69 Ohio St.3d 596, 1994-Ohio-153,635 N.E.2d 31, John Edgar Click's placement of the funds in joint and survivorship accounts constitutes conclusive evidence of his intention to transfer a survivorship interest to them upon his death. We agree.
 {¶ 38} In light of the foregoing case law, we reach the following conclusions: 1) a husband may make a gift of personal property to another person, not his spouse, during his lifetime, even if it would defeat his spouse's distributive share at the time of his death, with certain exceptions which are not applicable in the case sub judice; 2) the making of such a gift does not constitute a fraud upon the surviving spouse; 3) delivery, which *Page 21 
must accompany an ordinary gift, is unnecessary in the case of establishment of joint and survivorship accounts because the execution of the joint account deposit contract between the depositor and the bank supplies the essentials of a completed gift.
 {¶ 39} John Edgar Click, during his lifetime, purchased, with marital assets, certificates of deposit and bonds, which he placed in joint and survivorship with his children, Appellees. The designation of these certificates of deposit and bonds in joint and survivorship resulted in completed gifts intervivos to Appellees. As such, this property passed to Appellees outside of John Edgar Click's estate, by contract, in accordance with R.C. 1109.07. Accordingly, there is no means by which the trial court, nor this Court, may now set aside the making of these gifts. Had Appellant been successful in obtaining a divorce from John Edgar Click prior to his demise, the result may well have been different.
 {¶ 40} However, based upon the facts below, we cannot conclude that any alleged financial misconduct of John Edgar Click during his marriage rises to the level of fraud for purposes of supporting a claim for civil conspiracy. *Page 22 
 IV. The Dissent {¶ 41} The dissent states that the creation of a constructive trust is the proper course in this situation and relies largely on Estate ofCowling v. Estate of Cowling, 109 Ohio St.3d 276, to support this contention. In Cowling, the Supreme Court of Ohio determined that a constructive trust was necessary where a husband had withdrawn funds from joint accounts, held with his wife, and then had placed those funds into accounts for his children. However, in Cowling, the Court determined that only those funds, removed by the husband, which had been contributed by the wife to the joint accounts should be placed into a constructive trust. Those funds which had been contributed by the husband to the joint accounts were not subject to the constructive trust. Id. at 284.
 {¶ 42} In the case at hand, the accounts held jointly by John Edgar Click and his children were funded by John Edgar Click, not his wife Ahrea Click. Applying the rationale used in Cowling, because the funds withdrawn by John Edgar Click, from accounts held jointly with his wife, Ahrea, had not been contributed by Ahrea, those funds are not subject to a constructive *Page 23 
trust. Appellees have met their burden of demonstrating that no genuine issue of material fact exists with regard to the existence of an underlying unlawful act of fraud or the primary claim of civil conspiracy.
 {¶ 43} Additionally, and unlike the dissent's position, we prefer to give due deference to the trial court's discretion in its review of the pleadings below and exercise judicial restraint. Contrary to the view expressed in the dissent, we do not believe it is necessary for a spouse to obtain consent to expend joint funds or any other funds for that matter. While martial discord may develop if monies are disposed of without a discussion between a husband and wife, we certainly do not believe it rises to the level expressed by the dissent. We also believe it is best to allow litigants to draft pleadings as they see fit and not expect any court to become an advocate for alternative remedies, especially one at the appellate level.
 {¶ 44} Accordingly, and based on the foregoing, we affirm the trial court's grant of summary judgment in favor of Appellees.
JUDGMENT AFFIRMED.
[2] The record reflects that Nancy Lynn Jarrell Click is now Nancy Click Hehmann. However, for purposes of this opinion, we follow the trial court's judgment entry and refer to her by her former name.
[3] However, the MacLean court stated in its decision that "Mr. MacLean, in the transaction which is the subject of this litigation, may not have been guided by the highest code of ethics, but, in our opinion, the transaction was perfectly legal and did not constitute a fraud upon his wife." *Page 24