Miller, Appellant, v. Yocum, Exrx., et al., Appellees.

[Cite as Miller v. Yocum, 18 Ohio App. 2d 52.]

(No. 228—Decided April 9, 1969.)

*Messrs. Meredith, Meredith, Tait & Basinger,* for appellant.

*Messrs. McKeever & McKeever, Mr. Richard C. Bennett, Messrs. Light, Siferd & Light,* and *Messrs. Connaughton & Weger,* for appellees.

Guernsey, J. This is an appeal from a judgment of the Probate Court of Auglaize County, in a declaratory judgment action, declaring Plumah Yocum, the surviving depositor of a joint and survivorship checking account, to be the owner thereof to the exclusion of the residuary legatees of Clara Schroyer, the decedent joint depositor who had provided all the funds deposited to the account. Plumah Yocum and Thelma Brown, as coexecutors of the estate of Clara Schroyer, had listed the account in the inventory of her estate describing it as a joint and survivorship account in the names of Clara Schroyer and Plumah Yocum, but they did not add the same to or include the same in the total of the decedent's personal property accounted for in the inventory. Exceptions to

the inventory were filed by the appellant here, L. Howard Miller, a residuary legatee, claiming that the account should have been listed as part of the total assets of the estate of the decedent.

Almost a year after the creation of the account, on the application of Plumah Yocum and with the ward's consent, a guardian was appointed for the estate of Clara Schroyer on the ground that she was incompetent by reason of advanced age (93 years) and illness. The guardian subsequently filed an inventory including in the total of personal property the subject account, listed as "checking account Peoples National Bank, $7,046.15." On the day before filing his inventory, he went to the bank, left a copy of his letters of guardianship and signed an authorized signature card, "Daniel D. McKeever, Guardian of Clara Schroyer." In proceedings to reduce the amount of guardian's bond and in his final account the guardian described the account as "Peoples National Bank of Wapakoneta, Ohio, checking account (joint and survivor with Plumah Yocum as survivor)." The guardian made no deposits in or withdrawals from the account and exercised no dominion over the same except as here indicated, and the financial needs of the ward prior to her death were met from other of her assets.

There is no serious contention that there was a failure by the initial contract with the bank to create an account upon which either party could draw, or which in the absence of some intervening change would become the sole property of the survivor of the parties to the contract of deposit; and we find that the record does not support a conclusion to the contrary. The sole question then before this court is whether the intervening appointment of a guardian of the estate of Clara Schroyer, or the guardian's actions in relation to the account, or the failure of Plumah Yocum to except to the inclusion of the account in the guardianship inventory, or her action as coexecutor in mentioning same in the decedent's inventory, either terminated the joint and survivorship contract to deprive Plumah Yocum of any title to the proceeds of the account

or estopped her from claiming any title thereto as against the residuary legatees of the estate of Clara Schroyer.

Although the Supreme Court has determined that the form of the deposit should not be treated as conclusive and that even after the death of one of the parties to an account which is joint and survivorship in form the realities of ownership may be shown (*In re Estate of Svab*, 11 Ohio St. 2d 182), such accounts are often used as a substitute for a testamentary disposition of the cash assets of an estate and are sometimes the sole and simplest means permitted by law used in effecting the transfer of title of such assets from a decedent to the decedent's beneficiaries, and a means often selected to avoid the probate administration of such assets as well as some of the costs of probate administration.

To conclude that the mere appointment of a guardian without any necessity existing for the guardian to use such assets for the support of his ward should terminate and defeat the intent of the ward as it existed at the time of the creation of the account would serve to frustrate and defeat the planning of the ward with respect to the ward's entire estate and to cause assets to be diverted to beneficiaries other than intended by the ward. For instance, the intent of a husband to provide for his widow by transferring all his assets to her through the means of joint and survivorship bank accounts would be overridden, and the widow might be limited to a statutory share with the remainder of the estate passing to other beneficiaries.

Although certain of the statutes of Ohio, for example, Sections 2111.14, 2109.37, 2109.371 and 2109.42, Revised Code, impose upon a guardian the duty of managing the estate for the best interest of his ward and to invest the funds thereof in approved income producing investments, Section 2109.38, Revised Code, permits the guardian to retain any part of a trust estate as received by him, provided the circumstances are not such as to require the fiduciary to dispose of same in the performance of his duties. Moreover, circumstances may exist where it is in the best interest of the ward to preserve and perform his contract-

ual obligations even though to do so will not produce the maximum income for the guardianship estate. There being sufficient other unencumbered assets from which to meet the daily needs of the ward, there was no duty, as a matter of law, on the guardian here to terminate the joint and survivorship bank account and to invest the proceeds thereof in some investment solely in the name of the guardianship estate or solely for the benefit of the ward, nor, upon failure of the guardian so to do, may it be concluded that there was a constructive conversion of such proceeds from joint contractual ownership to the individual ownership of the ward or her estate. Nor, in fact or in law did the guardian actually exercise such dominion over the account here to alter either the joint and survivorship contract or Plumah Yocum's title, as survivor, to the proceeds of the account.

We cite, with approval, the case of *National City Bank of Cleveland* v. *Hewes*, 90 Ohio Law Abs. 372. See, also, *In re Estate of Jones,* 68 Ohio Law Abs. 282, distinguishable because of the existence of a contract for services and because the guardianship was merely of the person of the ward; 10 American Jurisprudence 2d 334, Banks, Section 371; and 26 University of Chicago Law Review 376, 400, Kepner, "Five More Years of the Joint Bank Account Muddle."

We find nothing from which to conclude that any action, or failure to act, of Plumah Yocum estopped her from now asserting title to the proceeds of the bank account.

*Judgment affirmed.*

COLE, P. J., concurs.

YOUNGER, J., dissenting. I must dissent from the majority opinion which holds that the original intention of Mrs. Schroyer in making the deposit should be dispositive of our holding here. It may be assumed that her intention was to give Mrs. Yocum survivorship rights. Otherwise, she would not have made the account joint and survivor. However, if this was her only intention she would have

chosen a savings account with interest rather than a checking account without interest. It could be equally assumed that her intention was merely to give Mrs. Yocum the right to draw checks in payment of her expenses, considering her advanced age and deteriorating physical condition, with survivorship rights.

However, I will not quarrel with the majority assumption except to say that it is only half of the original contract of deposit. The real contract between Mrs. Schroyer and the bank is this: "I hereby deposit $7,000 which the bank is to pay to me, or Mrs Yocum, or either of us, or the survivor, *unless I draw all or part of it out tomorrow, or some other day, or unless I need it for myself, or unless I change my mind.*" It was not a completed gift to Mrs. Yocum. It was not a promised gift. It was contingent upon many things, not the least of which was that Mrs. Schroyer might change her mind. This is an incident of any joint and survivorship account. Mrs. Schroyer had this right up until the day before her guardianship. This is the way the account was as the guardian found it.

The guardian went to the bank, gave it a copy of his letters of guardianship and signed a withdrawal card "Daniel D. McKeever, guardian of Clara Schroyer," to govern future withdrawals from the account. No one would contend that after this, and after the account had been deposited with the president of the Wapakoneta National Bank, in bond reduction proceedings, that Mrs. Yocum, could make any withdrawals from it. She had lost her right. It had been taken away from her by operation of law. She had been stopped, and the bank would not and could not pay her. The guardian could not be a joint owner with her. He could not give it to her. He kept it and turned it over in kind to the executors of Mrs. Shroyer's estate after her death. The executors received it in kind as an asset of her estate.

The duty of the guardian under the law was to "manage the estate for the best interest of his ward." He could under the law have cashed it in and reinvested it in interest bearing securities. He could also, under the law, leave it

as is expecting it to be necessary for his ward's future expenses. He included it in his inventory as "checking account Peoples National Bank, $7,046.15," without other words of description. No one contends that he should not have included it in his inventory as an asset of his ward's estate.

It was his duty under the law to "manage" the entire estate, not a part of it. It was not his duty to "manage" the estate so as to give $7,000 of it away. The intervention of the guardianship, with the control exercised over it by the guardian, now, in my opinion, makes this asset a part of Mrs. Schroyer's estate.